Consolidation Coal Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and William R. Mountain, Respondents.

Argued October 30, 1978, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three. Reargued June 6, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, BLATT, DISALLE, CRAIG and MACPHAIL. Judges WILKINSON, JR. and ROGERS did not participate.

*Daniel L. Fassio*, with him *Edward C. Schmidt, Andrew Rose* and *Rose, Schmidt, Dixon, Hasley & White,* for appellant.

*Kenneth J. Yablonski*, with him *J. Scott Leckie* and *Benjamin L. Costello,* for appellees.

OPINION BY JUDGE CRAIG, October 30, 1979:

Consolidation Coal Company has brought this appeal from an award of workmen's compensation benefits by the Workmen's Compensation Appeal Board (board) to claimant William R. Mountain for total disability resulting from coal miner's pneumoconiosis.

The only issue presented to us is whether claimant complied with Section 311 of The Pennsylvania Workmen's Compensation Act of June 2, 1915, P.L. 736, *as amended* (Act), 77 P.S. §631, which, as applicable to occupational disease claims, requires that an employee notify his employer of his disability within 120 days of the date that he "knew or should have known of the existence of his disability resulting from an occupational disease and the disability's possible relationship to his employment." *Zacek v. Republic Steel Corp.*, 25 Pa. Commonwealth Ct. 199, 202, 359 A.2d 842, 844 (1976).

After argument before a three-judge panel, this case was ordered for reargument before the court en banc because of the difficulties presented by the Section 311 notice question.

The undisputed basic facts of this case are that claimant worked in the coal mines for 40 years, from 1934 to 1974. He applied for federal black lung benefits in 1972, and a federal black lung award was made to him July 16, 1973. However, he continued to work until February 14, 1974. He began receiving federal benefits under the federal award in March 1974. On September 27, 1974 a physician definitively advised claimant that he was totally disabled from pneumoconiosis.

In addition, among the findings of the referee were the following:

8. On September 27, 1974 the claimant became permanently and totally disabled due to coal-worker's pneumoconiosis and said disability is a result of his exposure to a silica hazard during his total and cumulative employment in the coal mining industry.

9. Notice of claimant's disability was given to the defendant employer on November 25, 1974.

On appeal from the referee's decision to the board, the employer for the first time raised a question of notice under Section 311, specifically contending that the notice period began July 16, 1973, the date of federal black lung award. In that appeal, the employer also raised an allocation question, and attacked findings concerning exposure to hazard and the relationship of the claimed disease to employment, but the employer does not now pursue these latter claims.

As to the notice question, the employer's brief now adds additional dates on which employer alleges that the notice period began. Unlike employer's original claim of record, which pointed only to the date of the federal black lung award (while claimant was still working), employer's brief now initiates new arguments based upon the date of retirement in February,

1974 and the date of receipt of federal benefits in March, 1974, both more than 120 days before the notice in November, 1974.

The claim based upon the date of federal black lung award, while claimant was still working, is directly answered by our decision in *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 610, 387 A.2d 174 (1978), where the opinion by Judge CRUMLISH, JR. stated:

The date of the Federal Black Lung award is only one of several factors which the trier of fact may consider in determining the extent of Claimant's knowledge. Moreover, under the facts of this case, the date of the Federal Black Lung award could not conceivably be the date of disability for the purposes of receiving workmen's compensation in Pennsylvania. . . . In Pennsylvania it has been held that disability 'should be regarded as being synonymous with "loss of earning power".' Borough of Catawissa v. Schultz, 9 Pa. Commonwealth Ct. 546, 548, 308 A.2d 633, 634 (1973). Therefore, the date of the award of Black Lung benefits cannot be considered as the commencement of his disability since he continued to work in the mines for some 14 months after the date of the grant of Federal benefits.

*Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board, supra,* 35 Pa. Commonwealth Ct. at 613, 387 A.2d at 176. We thus held that the notice period for a total disability claim cannot stem from a date on which the fact of continuing ability to work shows that earning power has not been lost.[1]

---

[1] As we pointed out in *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 74, 84, n. 4,

In considering the claims that the notice period began on the date of quitting or on the subsequent date of receipt of federal benefits, we look to our interpretation of Section 311 in *Zacek v. Republic Steel Corp., supra,* recently followed and affirmed in *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 74, 407 A.2d 117 (1979), and decisions cited therein.

In *Zacek, supra,* Judge Mencer made clear that the notice period begins when the claimant *knows or should know of the existence of his disability resulting from an occupational disease* and that disability's *possible relationship to his employment.* In *Republic Steel Corporation, supra,* we have pointed out that the plain language of Section 311 thus spells out the notice period begins upon the conjunction of five elements: (1) knowledge or constructive knowledge (2) of disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to the employment.

Here the record unequivocally leads us to a conclusion that, even if claimant could have arrived at inferences that he had the disease while he was still working, and some disability when he quit, he had no basis for knowledge of total disability *due to* pneumo-

407 A.2d 117, 121, n. 4 (1979), to hold that the notice period for a total disability claim begins on a date when there is less than total disability could result in an unworkable conflict between Section 311 and Section 315 of the Act, 77 P.S. §602, setting a three-year time limit upon filing the total disability claim petition. Because the like wording of both sections expresses the same starting date for both, an interpretation which resulted in the claim-filing period starting before the onset of total disability, in a case where more than three years elapsed until the disability became total, would mean that the right to file the claim would expire before it accrued —an unthinkable consequence.

coniosis until Dr. Ianuzzi's diagnosis in September of 1974.

Because claimant testified without contradiction that his family physician did not tell him that he had pneumoconiosis or black lung, the federal award—made while he still worked—was the only evidence which could suggest to claimant that he then had the disease in question. If we take other evidence, substantially as summarized in the employer's brief, we note claimant's testimony as to a breathing problem while working, as to his family doctor's statement that such problem "evidently was because of working in the coal mines," and as to the absence of any other known disease or physical problem when he quit. Concerning claimant's knowledge of the extent of disability when he retired from the mines, claimant's testimony is uncomplicated: at the time he quit working in the mines, he couldn't work any more; he did not know that he was disabled until he had the examination of September, 1974.

However, even if all those facts together could be said to establish claimant's knowledge that he had both a disease and a disability at the time of quitting work, the mere coexistence of those two elements is simply not evidence that such disability was one *resulting from occupational disease,* as the statute's terms read. To require an assumption the one matter is the cause of another, simply because the two exist simultaneously, would be to require adherence to a fundamental error of logic. Clearly a known victim of black lung could be disabled in fact by another disease, such as heart disease, or by a nonoccupational disease, such as cancer.

In this case, review of the referee's finding that claimant became totally disabled September 27, 1974, as a result of his exposure to a silica hazard during his employment in the coal mining industry, discloses

it to be supported by substantial evidence, with any earlier date of disability or constructive knowledge of its cause suggested only by inferences of lesser substance. Therefore, notice given on November 25, 1974 complied with the statute as being within less than 120 days after September 27.[2]

We affirm the board's decision.

Judge MACPHAIL concurs in the result only.

ORDER

AND Now, this 30th day of October, 1979, the order of the Workmen's Compensation Appeal Board dated November 18, 1976 affirming the referee's award of April 26, 1976 is hereby affirmed. Accordingly, it is ordered that judgment be entered in favor of claimant William R. Mountain and against Consolidation Coal Company and the Commonwealth of Pennsylvania in the sum of $106.00 per week commencing November 25, 1974, with the Commonwealth liable for 50% or $53.00 per week thereof and the Consolidation Coal Company, self-insured, also liable for 50% or $53.00 per week thereof. Interest, payable by the Consolidation Coal Company only, shall accrue on all due and unpaid compensation at the rate of 10% per annum.

---

[2] Because the employer here raised no question before the referee as to the starting date of the notice period, the referee made no more specific finding on that point other than his finding of commencement of disability.

In *McManus v. Rochester & Pittsburgh Coal Co.*, 29 Pa. Commonwealth Ct. 91, 368 A.2d 1365 (1977) and in *Zacek, supra*, we remanded for a more specific finding as to when the notice period began because the employer in each of those cases raised the issue and called upon the referee to do so. Here, where the employer has waited until after the hearing even to dispute the issue of notice, a remand, for findings which the employer does not request even now, is not indicated where, since the notice period does not "begin to run" until disability is in existence, the finding necessarily embraces the more specific one not sought.

72

Dissenting Opinion by Judge Mencer:
I respectfully dissent.

Section 311 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §631, insofar as applicable to occupational disease claims, requires that an employee notify his employer of his disability within 120 days of the date that the employee (1) becomes disabled and (2) knows or in the exercise of reasonable diligence should know of the possible relationship between the disability and his employment. *McManus v. Rochester & Pittsburgh Coal Co.*, 29 Pa. Commonwealth Ct. 91, 368 A.2d 1365 (1977).[1] Since the referee failed to make findings on either of these issues, I would remand.

With regard to when the claimant "became disabled," the referee found that he became *totally* disabled on September 27, 1974, the date claimant was told by a physician that he was totally disabled due

---

[1] Section 311 provides as follows:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, *disability resulting from occupational disease*. (Emphasis added.)

to coal worker's pneumoconiosis. The referee made no finding concerning when the claimant became partially disabled. It could be argued that, under the circumstances of this case, the term "disability" in Section 311 should be construed to mean "total disability" and not "partial disability," in which case the referee's finding would be adequate. *Cf. Rakoczy v. Jandy Coal Co.*, 26 Pa. Commonwealth Ct. 459, 363 A.2d 1338 (1976) (where claimant is seeking benefits for total disability, liability of Commonwealth under Section 305.1 of the Act, 77 P.S. §411.1, is determined by reference to date of total disability). However, the purpose of the notice requirement is to protect the employer against claims made after opportunity for a full and complete investigation has passed, and the logical triggering event is therefore "a *claimant's* knowledge of his physical inability to work and its *possible relationship* to his employment." *Garden Coal Co. v. Workmen's Compensation Appeal Board*, 27 Pa. Commonwealth Ct. 568, 573 n. 4, 367 A.2d 360, 363 n. 4 (1976) (emphasis in original).[2] That is, when an employee knows or should know that he has a claim for compensation, notice should be given to the employer within 120 days to allow for as complete an investigation as possible, and the fact that the employee may not know for certain whether he is totally or only partially disabled should not relieve him of this obligation. In this case, claimant's testimony, although somewhat confusing, would allow the factfinder to infer that claimant was at least

---

[2] In *Garden Coal*, we also made it clear that the issue of notice under Section 311 is entirely distinct from the issue of apportionment of liability under Section 305.1 and that the term "disability" must be construed with reference to the underlying purpose of the particular section involved. 27 Pa. Commonwealth Ct. at 572-73 n. 4, 367 A.2d at 362-63 n. 4.

partially disabled when he left his job on February 14, 1974.[3]

Since we cannot infer from the referee's award of benefits that the issues set forth in the first paragraph of this dissent were resolved in claimant's favor, *see Page's Department Store v. Velardi*, 464 Pa. 276, 346 A.2d 556 (1975), I would remand to allow the referee to make the necessary findings of fact.

President Judge BOWMAN joins in this dissent.

---

[3] On direct examination, claimant testified that he was first advised of his condition on September 27, 1974. On cross-examination, however, the claimant testified that prior to January 1973 he had been told by his family physician that his breathing difficulties were attributable to his work in the coal mines. The fact that claimant applied for and was awarded federal black lung benefits in 1973, although not controlling as a matter of law, is nevertheless a factor for the referee to consider in resolving the apparent inconsistency in the claimant's testimony. *See Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 610, 387 A.2d 174 (1978).