Republic Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, John Zacek and Commonwealth of Pennsylvania, Respondents.

Argued November 3, 1978, before Judges MENCER, DiSALLE and CRAIG, sitting as a panel of three. Reargued June 6, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, BLATT, DiSALLE, CRAIG and MacPHAIL. Judges WILKINSON, JR. and ROGERS did not participate.

*Linton L. Moyer,* with him *Thomson, Rhodes & Grigsby,* for petitioner.

*Kenneth J. Yablonski,* with him *Benjamin L. Costello,* for respondents.

OPINION BY JUDGE CRAIG, October 30, 1979:

This appeal of Republic Steel Corporation, employer, from the award of workmen's compensation benefits by the Workmen's Compensation Appeal Board (board) to claimant Zacek for total disability resulting from coalworker's pneumoconiosis, is again before this court after we earlier remanded it for additional findings of fact. *Zacek v. Republic Steel Corp.,* 25 Pa. Commonwealth Ct. 199, 359 A.2d 842 (1976).

The only issue before us now, as in *Zacek, supra,* is whether the claimant was timely in giving the 120-day notice to the employer required by Section 311 of The Pennsylvania Workmen's Compensation Act of June 2, 1915, P.L. 736, *as amended,* (Act), 77 P.S. §631.

After this case had returned to this court and had been argued before a three-judge panel, it was then ordered for reargument before the court en banc because of the difficulties presented by the Section 311 notice question.

Section 311,[1] as a condition of allowing compensation, requires that the employer be given notice with-

---

[1] Section 311, in its entirety reads:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone

in 120 days after the occurrence of the injury or disability for which compensation is sought. In *Zacek, supra*, 25 Pa. Commonwealth Ct. at 202, 359 A.2d at 844, Judge MENCER succinctly phrased the content of Section 311 in remanding for

> findings concerning when Zacek knew or should have known of the existence of his disability resulting from an occupational disease and the disability's possible relationship to his employment.

As thereby summarized, Section 311 provides that the notice period does "not begin to run until" claimant has: (1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to his employment. The plain language thus requires that all five elements conjoin, a reading of which is clear without resort to the doctrine of liberal interpretation of worker's compensation laws in favor of the employee. *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 10 Pa. Commonwealth Ct. 247, 249, 309 A.2d 842, 843 (1973).

---

in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease.

Pursuant to the remand, the referee here made a number of rather detailed findings, the eighth of which was that:

> [W]hen the claimant, John Zacek, ceased his employment on December 31, 1973, he did not know, nor through the exercise of reasonable diligence, could he have known of the existence of his injury (in this case, an occupational disease), or of its possible relationship to his employment.

The sixth finding was that:

> [T]he claimant, John Zacek, is totally disabled as a result of all his exposure to the hazard of coal dust from an occupational disease, coal workers pneumoconiosis, commencing June 24, 1974 and continuing to the present and into the future.

An additional part of the eighth finding was:

> Even taking into consideration all that the claimant knew or thought he knew at the time he ceased his coal mine employment, he did not know that he was totally disabled from an occupational disease until the existence of the disability was completely established by medical diagnosis. . . .

The ninth finding was:

> The triggering date for the 120-day notice requirement under Section 311 is June 24, 1974. The defendant-employer, Republic Steel Corporation, received notice on July 2, 1974, well within the 120-day limit.

Other findings and the underlying evidence are discussed below.

The employer's brief rests upon the assertion that "the starting point for the running of the notice should be January, 1974 . . ." (i.e., shortly after

claimant's 46 years in the mines ended on December 31, 1973), contending that:

> At that point, or certainly within a few weeks thereafter, the claimant was adjudged disabled by his family physician and he knew or should have known the nature, seriousness and work connection of his illness. The report which he received from his physician on June 26, 1974, merely confirmed what he already knew—that he was disabled due to black lung disease.

But the record supports the finding that, no matter how claimant was "adjudged" by his physician in January, 1974, no such judgment was communicated to claimant until June 24.

As employer's brief itself correctly states, Dr. Andrew J. Cerne, claimant's attending physician, testified that as a result of an examination of the claimant conducted on January 4, 1974, he formed a "suspicion" that the claimant had anthraco-silicosis. Dr. Cerne recalled mentioning that suspicion to claimant. Within two weeks, Dr. Cerne received and reviewed ventilatory test results and chest x-rays. By the time of claimant's next appointment, on January 18, 1974, Dr. Cerne thought that claimant did have anthraco-silicosis and was convinced that claimant was totally disabled, but the doctor had no recollection of having told that to claimant at that time; he said only that it is "possible" that he might have told claimant. Not until June 24, 1974, did Dr. Cerne definitely inform claimant of his diagnosis of disability and his identification of the disease causing it.

Thus, contrary to employer's key contention, claimant did not have the benefit of any medical judgment in January, 1974.

Indeed, the medical judgments have continued to be conflicting. Employer's brief fails to mention the testimony which was given by employer's medical ex-

pert, a specialist in cardiovascular and thoracic surgery, who, in the light of the above history and examination of claimant on October 11, 1974, testified, among other things, as to claimant as follows:

Q. Does that mean there is no evidence of pneumoconiosis?

A. That is certainly our opinion.

Q. Would it be fair to say that if it is your opinion that the man does not have pneumoconiosis, that he could not be disabled from it?

A. Yes.

When one medical expert has a suspicion, and another medical expert swears to the contrary, the layman can hardly be held to know that which one of the doctors only suspects.

The employer also points back to matters which occurred while claimant was still working. Claimant acknowledged that he filed three applications for federal black lung benefits, the first of which was made in 1971. Claimant also testified: that before he quit the mine Dr. Cerne told him that he had "miner's asthma" and that he should leave the mine; that he quit the mine because he did not have any wind and could not breathe any more; that he was "going to try to last till I am 62" (which he did); that he had a history of frequent coughing, loss of sleep, shortness of breath and coughing up sputum; that he was aware when he left the mine that his breathing problem was caused by miner's asthma which he thought was black lung; and that he felt that he should have left the mine a couple of years before he did.

This contention of employer concerning pre-retirement information is answered by our reply to a remarkably similar contention in *Workmen's Compensation Appeal Board v. Republic Steel Corp.*, 31 Pa. Commonwealth Ct. 301, 375 A.2d 1369 (1977), which

held that the notice period started, not as a result of general medical information before the cessation of work, but on medical confirmation some time after the last day of work. Judge BLATT's opinion is as follows:

> Simply stated, Republic contends that, because the claimant testified that he had been told by a physician some time prior to his leaving work that he had coalworker's pneumoconiosis, he knew or should have known that he was disabled for that reason on his last day of work, and that his notice of disability, as filed here, was therefore untimely.

> . . . Although there may be cases where a fact-finder could conclude that a claimant should have known of the existence of a disability and its possible relationship to his employment as of his last day of work, the referee here found otherwise and the record supports the referee's finding that, although the claimant had quit work on March 9, 1974, he was first informed by his physician on August 15, 1974 *that his total and permanent disability was due to coalworker's pneumoconiosis which had been contracted in his employment.* We therefore find no error in the Board's conclusion that the 120-day limitation period began to run from August 15, 1974 and that the claimant's notice of his disability to Republic was timely. (Emphasis in original.)

*Workmen's Compensation Appeal Board v. Republic Steel Corp.,* 31 Pa. Commonwealth Ct. at 305, 375 A.2d at 1372.

As to the contentions concerning claimant's federal black lung applications, *Jones & Laughlin Steel v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 610, 387 A.2d 174 (1978), by Judge

CRUMLISH, JR., held that not even a federal black lung award, during the working life, triggered the notice period, stating:

The date of the Federal Black Lung award is only one of several factors which the trier of fact may consider in determining the extent of Claimant's knowledge. . . . Therefore, the date of the award of Black Lung benefits cannot be considered as the commencement of his disability since he continued work in the mines for some 14 months after the date of the grant of Federal benefits.

*Jones & Laughlin Steel v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. at 613, 387 A.2d at 176.

Here, under our proper scope of review, we are to affirm essential findings of fact unless they are "not supported by substantial evidence." Section 44 of the Administrative Agency Law, 71 P.S. §1710.44.[2] In accordance with settled doctrine, we are to consider the evidence in the light most favorable to the party who prevailed below. *Bureau of Occupational Injury and Disease Compensation v. Brown,* 16 Pa. Commonwealth Ct. 148, 152, 329 A.2d 541, 544 (1974).

Our conclusion is that all of the above evidence, taken together, provides substantial support for the referee's finding that the notice period did not begin until June 24, 1974. Not until that time does the record show a conjunction of all five elements: *knowledge,* actual or constructive, of a *disability* in *existence* and *resulting from occupational disease,* as

---

[2] Act of June 4, 1945, P.L. 1388, *as amended.* This provision, applicable during the time period governing this case, was repealed by Section 2(a) of the Judiciary Act Repealer Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1244]. A like provision is now found in the present Administrative Agency Law, 2 Pa. C.S. §704.

well as having a *possible relationship to his employment*.

There is no question but that claimant knew or believed that he had the disease of "miner's asthma" before and after he quit work, but the statute does not start the notice period with even a certain knowledge of merely having a particular disease. Moreover, the key is not only knowing that one has a disability, but also that it is a disability *resulting from the occupational disease,* as well as being possibly related to the employment.

Even if we make an unwarranted assumption that claimant knew himself to be totally and permanently disabled when he retired December 31, 1973[3]—without any physician so advising him—there is no basis to assume that he could reasonably have known the cause of his assumed disability at that point. As the referee found, the symptoms claimant had are "not peculiar to the disease of coalworker's pneumoconiosis and can be the result of any number of non-

---

[3] Claimant's testimony gave two reasons for retiring when he did.

He said: "I didn't have no wind no more couldn't breathe. That is the reason I did." He said that he was aware that he had pneumoconiosis when he left the mines. He agreed that he was unable to do his "normal duties."

He also said: "Another thing I had to sweat it out till I was 62 to get some kind of income. I should have got out couple years before that but I had to keep on working or else starve to death. . . . I told the boss I couldn't do it. I said, 'I'm going to try to last till I am 62. I have got to get out before I fall over.' "

This testimony did not require that the referee find that claimant, able to work on December 31, 1973, became totally disabled on January 1 or shortly thereafter. Claimant's testimony indicates that his retirement date was determined by his goal of working until age 62 as much as by anything else. Also, even if breathing difficulties, as claimant admitted, made him unable to do his normal duties as an underground miner, the worker cannot be said to be necessarily charged thereby with knowledge that he is henceforth to be considered totally and permanently disabled.

compensable conditions,'' citing, as his basis for that finding, no less an authority than the employer's expert physician, who knowledgeably pointed out that the symptoms included those of bronchitis, concluding that, not only was there no evidence of pneumoconiosis, but claimant was not in fact disabled.

This court has never held that a claimant's mere suspicion, or even his certain knowledge of a disease or disability, standing alone, starts the notice period without at least constructive knowledge that—in the words of the law—the disability is one resulting from the occupational disease.

As Judge MacPhail's opinion summarized in *Mathies Coal Co. v. Workmen's Compensation Appeal Board*, 41 Pa. Commonwealth Ct. 542, 399 A.2d 790 (1979) :[4]

> This Court has repeatedly upheld awards based on notice given some time after retirement for health reasons, but within the 120 days of actual diagnosis by the Claimant's physician of total disability *due to* coalworker's pneumoconiosis. [Republic Steel, *supra*]. (Emphasis supplied.)

---

[4] *Mathies* also involved federal black lung application or benefit, which we again refused to accept as a triggering factor for the notice period, even though it might be an indication of disability to some extent. A ruling that the notice period for a total disability claim commences with awareness of a disability less than total could confront a claimant with an impossible anomaly should such awareness occur more than three years before the onset of total disability. Because Section 315 of the Act, 77 P.S. §602, defines the starting date of the three-year limitation period for filing a claim as the very same date as that provided in Section 311 for starting the 120-day notice period, it is clear that, whenever such awareness preceded total disability by more than 3 years (as it well could), the Section 315 limitation for filing the total disability claim petition would expire before the worker became totally disabled—an incongruity to be avoided.

*Mathies Coal Co. v. Workmen's Compensation Appeal Board,* 41 Pa. Commonwealth Ct. at 542, 399 A.2d at 793.

Accordingly, considering Section 311's terms with respect to the elements required to start the 120-day notice period, and considering the substantial evidence in support of the findings that the notice was timely, we affirm the board's decision.

## ORDER

AND Now, this 30th day of October, 1979, the order of the Workmen's Compensation Appeal Board dated June 24, 1977 affirming the referee's award is hereby affirmed. Accordingly, it is ordered that judgment be entered in favor of the claimant John Zacek, and against Republic Steel Corporation and the Commonwealth of Pennsylvania, in the sum of $100 per week commencing June 24, 1974 at the rate of $25.00 per week or 25% payable by Republic Steel Corporation and $75.00 per week or 75% payable by the Commonwealth. Interest, payable by the Republic Steel Corporation, shall accrue on all due and unpaid compensation at the rate of 10% per annum. Republic Steel Corporation is liable to claimant John Zacek in the amount of $100.00 for deposition expense payable to claimant's attorney on claimant's behalf.

---

DISSENTING OPINION BY JUDGE MENCER:
I respectfully dissent.

Joseph Zacek (claimant) was employed by Republic Steel Corporation (employer) as a coal miner from 1956 through 1973. On December 31, 1973, claimant retired because he was experiencing breathing difficulties which rendered him unable to perform his normal duties. On June 24, 1974, he was informed by a physician that he was totally disabled from anthracosilicosis. On July 2, 1974, claimant notified

his employer of his disability due to an occupational disease, and on July 8, 1974, he filed a workmen's compensation claim petition.

Insofar as applicable to occupational diseases, Section 311 of The Pennsylvania Workmen's Compensation Act (Act) Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §631, requires that an employee notify his employer of his disability within 120 days of the date that the employee (1) becomes disabled[1] and (2) knows, or in the exercise of reasonable diligence should know, of the possible relationship between the disability and his employment. *McManus v. Rochester & Pittsburgh Coal Co.*, 29 Pa. Commonwealth Ct. 91, 368 A.2d 1365 (1977). The purpose of the notice requirement is to protect the employer against claims made after opportunity for a full and complete investigation has passed, and the logical triggering event is therefore "a *claimant's* knowledge of his physical inability to work and its *possible relationship* to his employment." *Garden Coal Co. v. Workmen's Compensation Appeal Board*, 27 Pa. Commonwealth Ct. 568, 573 n. 4, 367 A.2d 360, 363 n. 4 (1976) (emphasis in original). That is, when an employee knows or should know that he has a claim for compensation, notice should be given to the employer within 120 days to allow for as complete an investigation as possible, and the fact that the employee may not know for certain whether he is totally or only partially disabled should not relieve him of this obligation.

---

[1] It is my view that the findings of the referee and the majority opinion have added the word "total" before the word "disability" in arriving at the point in time at which the notice requirements of Section 311 shall commence. However, Section 311 provides that an employee give the required notice of his disability (partial as well as total) within 120 days of the date that the employee becomes disabled (partially as well as totally). To limit the commencement of the period to give notice to the date

The issues in this case are (1) whether the claimant was disabled when he retired on December 31, 1973 and (2), if he was disabled, whether at that time he knew, or should have known, of the possible relationship between his disability and his employment.

With regard to the first issue, one who is unable to perform his normal duties and who, as a result, suffers a loss of earning power is disabled as a matter of law and is entitled to benefits for a *total* disability, absent a showing that jobs which he is capable of performing are available. *See, e.g., Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968). The fact that an employee may not know for certain whether he is totally or only partially disabled does not relieve him of the obligation to give notice within 120 days of the time he becomes disabled.

In this case, the referee made no finding concerning when claimant became unable to perform his normal job. However, the only conclusion which can reasonably be drawn from the evidence is that the claimant was unable to perform his duties on December 31, 1973 and that it was for this reason that he retired. The relevant portions of the claimant's testimony follow:

Q. Is that why you quit because . . . A. No, I had—because I didn't have no wind no more couldn't breathe. That is the reason I did. Another thing I had to sweat it out till I was 62 to get some kind of income. I should have got out couple years before that but I had to keep on working or else starve to death. Q. Were you aware, Mr. Zacek, when you left the mines that you had pneumoconiosis? A. Yes, yes. Q. Were you unable to do your normal duties? A. That is right. I told the boss I couldn't do

that the employee becomes *totally* disabled, seems to me to be a judicial amendment of Section 311.

it. I said, 'I am going to try to last till I am 62. I have got to get out before I fall over.' A finding that claimant was not disabled, to some extent, on December 31, 1973 would be in capricious disregard of claimant's testimony.

Turning to the second issue, it is again clear beyond doubt, from the claimant's own testimony, that on December 31, 1973 he knew, or should have known, of the *possible* relationship between his disability and his employment. Claimant testified that before he retired his physician told him that he had "miners' asthma" and that he should therefore get out of the mines.[2] This would clearly alert any reasonable man to the *possibility* that his breathing difficulties were related to conditions in the mine.

Since claimant's own testimony compels a conclusion that on December 31, 1973 he was disabled and knew, or should have known, of the possible relationship between the disability and his employment, the notice given 6 months later was untimely and the award of benefits should be denied.

President Judge BOWMAN joins in this dissent.

---

[2] In his eighth finding of fact, the referee found that "the claimant knew that he had a cough, loss of sleep, shortness of breath, and sputum production, and was also aware that he had pneumoconiosis on x-ray, and furthermore was advised by his treating physician, Dr. Cerne, while he was still working that he had miners asthma. . . ."