Republic Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, Ira V. Leasure and Commonwealth of Pennsylvania, Respondents.

Argued March 8, 1979, before Judges WILKINSON, JR., MENCER and DiSALLE, sitting as a panel of three. Reargued March 11, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, CRAIG, MACPHAIL and WILLIAMS, JR. Judge BLATT did not participate.

*Linton L. Moyer*, of *Thomson, Rhodes & Grigsby*, for petitioner.

*John M. Campfield*, with him *William J. Ober*, of *Scales & Shaw*, and *William C. O'Toole*, Assistant Attorney General, for respondents.

OPINION BY JUDGE WILLIAMS, JR., October 1, 1980:

This is an appeal by Republic Steel Corporation (Republic) from an order of the Workmen's Compensation Appeal Board affirming a referee's award of compensation to respondent Ira V. Leasure (claimant) for total disability due to coal miner's pneumoconiosis or "black lung."[1]

The claimant was employed by various coal mining

---

[1] This case was first argued in March, 1979. On November 16, 1979, it was ordered listed for reargument and it was reargued on March 10, 1980.

companies from 1926 to 1974. For Republic he worked as a shuttle car operator in coal mines from September, 1951, to January 31, 1974, when he retired.

In April, 1973, the claimant applied for federal "black lung" benefits, but that application was denied. In November, 1973, he sought reconsideration of that decision. Shortly after the claimant's retirement he applied again for federal "black lung" benefits, on February 7, 1974. The record of this case does not reveal what decision was made on that second federal application. On May 27, 1975, the claimant filed a claim petition under The Workmen's Compensation Act,[2] asserting that he had contracted pneumoconosis due to constant exposure to coal dust in his employment with Republic. Notice to Republic had been sent by certified mail on May 21, 1975.

Republic sought dismissal of the claimant's petition on the ground that he violated the notice requirements of Section 311 of the Act, 77 P.S. §631.[3] The referee rejected the contention and found that the claimant *first learned* of his disability and its possible relation to his employment after receiving a medical report from a Dr. William Conn on February 17, 1975. Based on that finding the referee concluded that the claimant had complied with the notice requirements of Section 311.

Central to this case is that feature of Section 311 which requires an employee to notify his employer of his disability within 120 days of the time the employee knew, or should have known, of the existence of the disabling disease and its possible relationship to his employment.

Republic has contended throughout that the time when the claimant knew or should have known of his

---

[2] The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, §101 et seq., *as amended*, 77 P.S. §1 et seq.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §631.

disability and its possible relationship to his work was prior to the date found by the referee, February 17, 1975. In so asserting, Republic places great emphasis on the claimant's statement at the hearing that he "thought" he had "black lung" when he applied for the federal benefits in 1973 and when he reapplied for them in February, 1974, after he had retired. The employer also points out the claimant's awareness of breathing problems at the time of those applications and that the claimant retired because of those breathing problems. In short, Republic asserts that the claimant knew or should have known of the relationship of his disability to his work as of the time he retired, January 31, 1974.

In *Republic Steel Corp. v. Workmen's Compensation Appeal Board*, 47 Pa. Commonwealth Ct. 74, 407 A.2d 117 (1979), we held that under Section 311 of the Act the notice period begins to run at a point when five elements coalesce: (1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to his employment.

The fact that in 1973, and in 1974 at the time of retirement, the claimant "thought" he had "black lung" does not militate in favor of Republic's contention. The claimant is not a doctor but a person of limited education. The claimant's testimony was sufficient to establish that he did not have the benefit of a medical judgment until after Dr. Conn examined him in February, 1975. Prior to that time he had been examined by other doctors but, according to claimant, none of them ever reported the results of the examinations. Nor is it of any conclusive consequence to this case that while the claimant was still working he applied for federal "black lung" benefits. *Consolidation Coal Co. v. Workmen's Compensation Appeal Board*, 47 Pa. Commonwealth Ct. 64, 407 A.2d 134

(1979); *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board*, 35 Pa. Commonwealth Ct. 610, 387 A.2d 174 (1978).[4]

Although claimant Leasure retired in January, 1974, because he felt unable to work because of breathing difficulties, and shortly thereafter reapplied for federal benefits because he "thought" he had "black lung," that evidence does not compel a conclusion that he "knew or should have known" that he was disabled due to an occupational disease contracted in his employment because, he was not medically informed until February, 1975. *Cf. Workmen's Compensation Appeal Board v. Republic Steel Corp.*, 31 Pa. Commonwealth Ct. 301, 375 A.2d 1369 (1977). In the *Jones & Laughlin* case the claimant had started receiving federal "black lung" benefits almost three years before he gave his employer notice of disability. However, the claimant in that case testified that during that period *no doctor* had ever informed him that he was disabled due to pneumoconiosis. We held that the claimant's testimony was sufficient to support the referee's conclusion that the Section 311 notice period was not triggered until the claimant was *medically* informed.

In the case at bar claimant Leasure testified that at no time prior to February, 1975, was he ever *medically* informed that he was disabled due to pneumoconiosis. The referee elected to believe the claimant and that finding on a question of credibility is final. *Jones & Laughlin, supra.*

However, the record of this case has memorialized an occurrence that dictates the remand of this case for additional proceedings. At the referee's hearing

---

[4] *Accord, Republic Steel Corp. v. Workmen's Compensation Appeal Board*, 47 Pa. Commonwealth Ct. 74, 407 A.2d 117 (1979); *Mathies Coal Co. v. Workmen's Compensation Appeal Board*, 40 Pa. Commonwealth Ct. 120, 399 A.2d 790 (1979).

on May 25, 1977, the following exchange took place between the referee and counsel for the employer:

BY THE REFEREE: But you [Republic Steel] were trying to evade the whole issue of whether the man is entitled to benefits by encouraging him in the first place to file [for black-lung benefits] while he was still working. This, you did.

MR. MOYER [attorney for Republic Steel]: We never encouraged—

BY THE REFEREE: Republic Steel and every other coal company did so. For any denial in that line, I just won't buy it. They encouraged—all of them—to file prior to July 1st, 1973. Your coal company was no different than the rest of them.

MR. MOYER: They did not encourage him to file. This hypothetical miner that you're referring to was not encouraged to file unless the man actually felt that he has some form of Black Lung, is that not correct?

BY THE REFEREE: No, that is not correct because that's just not the way it was done and I know and most everyone else knows. . . .

. . . .

. . . *I see no equity* in trying to evade the responsibility if the man is shown to be disabled from Black Lung by a technicality of notice.

. . . .

I really think that this for a large corporation to ignore the merits of whether there is a disability or not on a technicality once you encourage somebody to do something and try to beat him on the head with it, *I think it is as immoral as hell.*

. . . .

I think you got to understand that the credibility of the witness is strictly within the purview of the Referee. *I am trying to make this record if it does go anywhere why the Referee decides the credibility as he does decide it.*

MR. MOYER: I would like to comment in response to what you're saying. I don't know of any testimony in this case or on this record to indicate that Republic Steel specifically encouraged this man to file for Black Lung benefits.

BY THE REFEREE: The Referee takes judicial notice this was a policy.

MR. MOYER: I would object to that judicial notice for the record.

BY THE REFEREE: Come on. Do you think I've been sitting here for seven years and not know what's been done? My goodness gracious.

. . . .

I don't like to be argumentative. This is what I mean. This is what irritates me because you did know. (Emphasis added.)

To any objective eye this exchange can leave only one impression: that the referee stepped out of his role as an impartial fact-finder and assumed the role of an advocate, and quite forcefully. We do not declare that an animus toward the employer, which some could perceive in the exchange, actually shaped or influenced the referee's determination of the issues. However, both the employer and the employee were entitled to have the proceedings conducted in an atmosphere of impartiality. For a written record to strongly give the impression that such was not the case, cannot be accepted. For that reason, we are constrained to remand this case to the Workmen's Compensation Appeal Board to schedule a new hear-

ing, restricted to the issue of when the instant claimant knew or should have known his disability was related to his previous employment.

ORDER

AND Now, the 1st day of October, 1980, the above matter, at Docket No. A-73585 of the Workmen's Compensation Appeal Board, is remanded for an additional hearing consistent with the annexed opinion.

President Judge CRUMLISH dissents.