512 A.2d 765

Clyde W. Horne, Petitioner *v.* Workmen's Compensation Appeal Board (Owens-Corning Fiberglas, A C & S, Inc., and Johns-Manville Corporation, and Pacor, Inc.), Respondents.

542

Argued May 13, 1986, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Joel Persky,* with him, *Thomas W. White, Henderson & Goldberg, P.C.,* for petitioner.

*William E. Doyle, Donatelli & Doyle,* for respondent, Owens-Corning Fiberglas.

*David C. Welty,* for respondent, A C & S, Inc.

*Robert A. Weinert,* for respondent, Johns-Manville Corporation.

*Wilbur C. Creveling, Jr., Creveling and Creveling,* for respondent, Pacor, Inc.

OPINION BY JUDGE CRAIG, July 8, 1986:

Claimant Clyde W. Horne, before his death, filed this appeal of an order of the Workmen's Compensation

Appeal Board which affirmed a referee's decision deny-
ing Mr. Horne workmen's compensation benefits. The
referee concluded that Mr. Horne failed to give timely
notice to his employers of his injury as directed by sec-
tion 311 of The Pennsylvania Workmen's Compensation
Act.[1]

On April 19 and April 20, 1979, Mr. Horne had
served notice upon the four defendant employers in this
case, Johns-Manville Sales Corporation, A C & S, Inc.,
Pacor, Inc., and Owens-Corning Fiberglas Corporation,
that he was totally disabled and unable to return to
work as an asbestos insulation mechanic. Mr. Horne
stated in his claim petition that he became totally dis-
abled as a result of the occupational disease of asbestosis
and of carcinoma of the lung on January 23, 1979. Mr.
Horne testified that, on that date, Michael Wald, M.
D., so informed him, after conducting a physical exami-
nation and reviewing Mr. Horne's records.

However, the referee stated in Finding of Fact No.
22:

> [T]he Referee finds that Claimant knew, or by
> the exercise of reasonable diligence, should have
> known, of a possible relationship between his

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§631-
633. Section 311 provides in part:

> [U]nless such notice be given within one hundred and
> twenty days after the occurrence of the injury, no compen-
> sation shall be allowed. However, in cases of injury result-
> ing from ionizing radiation or any other cause in which the
> nature of the injury or its relationship to the employment
> is not known to the employe, the time for giving notice
> shall not begin to run until the employe knows, or by the
> exercise of reasonable diligence should know, of the exist-
> ence of the injury and its possible relationship to his em-
> ployment. The term 'injury' in this section means, in cases
> of occupational disease, disability resulting from occupa-
> tional disease.

employment and his disability at least by mid-1978.

He accordingly concluded that the notice which Mr. Horne provided to the four defendant employers on April 19 and 20, 1979 was not timely.

The referee further found:

[I]t is extremely difficult to accept Doctor Stull's testimony that he did not inform claimant of any possible connection or relationship between the conditions of chronic obstructive pulmonary disease and/or pulmonary fibrosis to his employment although Doctor Stull was aware of Claimant's history of asbestos exposure and Claimant's concern about asbestosis; and the former in conjunction with Doctor Friedman's diagnosis of pneumoconiosis in x-rays taken on at least three occasions during the year 1978. . . .

### Knowledge of Work-Related Disability

Section 311, as judicially construed, provides that the 120-day notice period "does not begin to run until" the claimant has: (1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to his employment. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Zacek)*, 47 Pa. Commonwealth Ct. 74, 77, 407 A.2d 117, 118 (1979).

The issue we first consider is whether the referee made findings of fact consistent with his conclusion that the five elements required to activate the section 311 notice period conjoined before January 23, 1979.[2]

---

[2] Because Mr. Horne unsuccessfully bore the burden of proof before the referee, this court's scope of review is limited to determining whether findings of fact are consistent with each other and

The claimant's brief contends that no evidence of record suggests that Mr. Horne was informed before January 23, 1979, that his condition was related to exposure to asbestos, referring to his express testimony that he received the diagnosis of asbestosis on January 23, 1979, in Pittsburgh from Dr. Wald. He additionally testified that no doctor who examined him in 1977 told him that he had asbestosis.

Subject to a flurry of objections[3] Mr. Horne stated at the hearing before the referee on August 7, 1979:

Q. In November of 1977, Mr. Horne, did either Dr. Stull or Dr. Sadr diagnose your condition?

A. Yes.

. . . .

Q. In 1977, were you diagnosed as having asbestosis or lung cancer?

---

with the conclusions of law and whether the findings can be sustained without capricious disregard of competent evidence. *Lamanna v. Workmen's Compensation Appeal Board*, 62 Pa. Commonwealth Ct. 535, 432 A.2d 465 (1981).

"A capricious disregard of evidence will be found when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Yanall v. Workmen's Compensation Appeal Board (Pennsylvania State Police)*, 69 Pa. Commonwealth Ct. 457, 460, 451 A.2d 797, 798 (1982).

[3] Although that testimony was taken subject to objections, the referee wrote:

In regard to certain objections and motions to strike testimony by Defendants' attorneys . . . but which objections and motions were withdrawn by respective counsel at a later time, the permissibility of such withdrawal being held under advisement by the Referee, the Referee herein rules that aforesaid attorneys for Defendants are permitted to withdraw the objections and motions to strike and the Referee considered such evidence in rendering this decision.

A. Yes.

. . . .

Q. Were you diagnosed as having asbestosis?

A. Yes.

However, at a later hearing before the referee, Mr. Horne retracted that earlier testimony.

Q. All right. Now, at the last hearing, you were asked by your counsel, what did they diagnose your condition as in November of 1977; and then again, in 1977 were you diagnosed as having asbestosis or lung cancer and your answer was yes.

A. I don't recall saying that; but if I did, it was wrong.

Q. You said in 1977 they did not tell you that you had asbestosis?

A. In 1977 they only told me I had acute bronchitis and pulmonary pneumonia. I had chest pains and I was given medicine for my heart, I guess.

Q. Well, why would you say that then last week . . . or at the last hearing?

A. One thing, since November of '77 I've been under medication constantly. That might be a reason.

Mr. Horne then testified:

Q. Mr. Horne, have you been diagnosed as having asbestosis?

A. Yes.

Q. When did you receive that diagnosis?

A. On January 23, 1979, in Pittsburgh.

The referee, as the judge of credibility, is free to reject Mr. Horne's later testimony and accept his earlier testimony, *Brodbeck v. Workmen's Compensation Appeal Board (Preston Trucking Co.),* 76 Pa. Commonwealth Ct. 372, 463 A.2d 1280 (1983).

Dr. Stull, Mr. Horne's treating physician, presented uncontradicted testimony that he did not inform Mr. Horne that his disability was caused by asbestos, and that he personally was unaware of that fact until January 23, 1979.

Dr. Stull testified:

Q. Doctor, was Mr. Horne disabled at the time of his hospitalization in November of 1977?

A. Yes.

Q. What was the cause of that disability?

A. Primarily his obstructive pulmonary disease.

. . . .

Q. At the time of the admission and the hospitalization through the time of discharge, did you ever advise Mr. Horne whether or not you believed his chronic obstructive pulmonary disease or pneumonitis to be related to his employment as an insulator?

A. No, sir.

Q. Have you, at any time, advised Mr. Horne that any condition which he might have or continues to suffer from was as a result of his employment as an insulator?

A. At the present time, yes, we advised him after the surgery in February of 1979.

Q. What surgery was performed in February of 1979?

A. He had a lung resectioned for a tumor and this was positive for malignancy, and the lymph nodes removed at that time were positive for asbestos crystals—fibers, asbestos fibers.

Q. Had at any time before that operation and diagnosis and resultant biopsy, had you advised Mr. Horne that his chronic obstructive pulmonary disease had been as a result of his employment?

A. No, sir.

The referee indicated that he was unpersuaded by that testimony, in view of Dr. Stull's notation in Mr. Horne's discharge summary for the latter's hospitalization ending on December 10, 1977, which read: "Of interest is the fact that the patient has been employed in industrial insulation for many years and has a long history of working with asbestos." However, Dr. Stull's further testimony was that he was not aware of the presence of asbestos in Mr. Horne's lungs until after the 1979 surgery.

With regard to Mr. Horne's bronchoscopy, which was performed on December 4, 1977 by Dr. Sadr, a thoracic surgeon, Dr. Stull stated:

Q. Doctor, are you saying that the biopsy which was done on 12-4-77 did not indicate any asbestos or silica fibers?

A. Yes, that's what I am saying.

. . . .

Q. So from that—the conclusion of the test on December 4, 1977 this patient did not have asbestosis or silicosis?

A. Insofar as that tissue study showed, yes.

. . . .

Q. In your review of the biopsy report which found the nonmalignant cells, is there any mention about a check for asbestos fibers in those cells?

A. No.

Q. You did not conduct that biopsy, did you?

A. No I didn't.

. . . .

Q. With the knowledge that you had that the man had worked in an asbestos field for an extended period of time as indicated in the dis-

charge, wouldn't you have checked for asbestos or directed them to check for asbestos?

A. I am sure the pathologist did check for that, but I have nothing on here that I can tell you proof positive what was done with the tissues.

The referee apparently relied, for further support of his finding that Dr. Stull was aware of Mr. Horne's asbestosis, on Finding of Fact No. 22:

Dr. Wald testified that Dr. Friedman, a radiologist, took x-rays of the Claimant on January 19, 1978, June 1978, and December 19, 1978 showing the presence of pneumoconiosis without explicitly stating asbestosis, and Dr. Wald testified that to him as a physician a job related pulmonary fibrosis would be a pneumoconiosis and in this instance specifically would imply that Claimant has asbestosis.

However, the crucial point[4] is that there is no evidence whatsoever to suggest that *Dr. Stull so informed Mr. Horne*. Therefore, even if we uphold the referee's rejection of all Dr. Stull's uncontradicted testimony of his lack of knowledge of the presence of asbestos, we must still, in order to affirm the referee's conclusion, charge Mr. Horne with either constructive knowledge, or alter-

---

[4] Dr. Wald was able to make that diagnosis, so far as his own medical conclusions were concerned. He testified:

Q. The question is: If a diagnosis was made of pulminary [sic] fibrosis, job-related, would that diagnosis indicate that the claimant has asbestosis. That's my question.

. . . .

A. To me as a physician a job-related pulminary [sic] fibrosis would be a pneumoconiosis and in this instance specifically an asbestosis, yes, I agree. I assume you are asking would it imply that to me.

Q. Yes.

A. Yes, it would imply that to me.

natively, the ability to ascertain that his condition of pulmonary fibrosis, in light of his career as an asbestos insulation mechanic, indicated that he suffered from asbestosis and that this condition was job-related. We cannot charge any claimant with such knowledge in the face of a total absence of evidence that the subject matter was communicated to the claimant. To do so, we would have to hold the claimant chargeable with medical expertise equal to Dr. Wald's, or equal to that which the referee believed that Dr. Stull should have possessed. Where the only relevant evidence is that the claimant's physician, based upon his own examination of the patient, and his review of the reports of other doctors, stated that asbestos had not been specifically implicated in Mr. Horne's obstructive pulmonary disease, the claimant clearly cannot be charged with knowledge to the contrary. Accordingly, we must reject the referee's finding that the notice period should have begun in mid-1978, in that such a finding capriciously disregards the evidence.

Moreover, even though Dr. Stull did inform Mr. Horne that he was totally disabled by obstructive pulmonary disease in November of 1977, all the remaining elements required by section 311—specifically, that the claimant have knowledge or constructive knowledge that his disability is the result of an occupational disease which had a possible relationship to his employment—did not conjoin until January 23, 1979. Therefore, by serving notice of his disability due to occupational disease upon the four defendants on April 19 and April 20, 1979, the claimant satisfied the notice provisions of section 311 of the Act.

### Post-June 30, 1973 Exposure

The board, because it affirmed the referee's conclusion that Mr. Horne failed to give timely notification of

his disability, did not review the referee's conclusions of law that:

4. Claimant failed to prove by sufficient competent evidence that his work-related condition of asbestosis, which resulted from direct contact with, handling of, or exposure to the dust of asbestos in an occupation involving such contact, handling or exposure, results in whole or in part from exposure to the hazard of occupational disease after June 30, 1973. . . .

5. Claimant proved by sufficient competent evidence that the giant cell carcinoma of the upper lobe of his right lung was contributed to by direct contact with, handling of, or exposure to the dust of asbestos in his occupation involving such contact, handling or exposure, however, Claimant did not prove by sufficient competent evidence that said condition resulted from exposure to the dust of asbestos after June 30, 1973.

. . .

Section 301(c)(2) of the Act provides that an occupational disease is a compensable injury under the Act only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973. . . .

77 P.S. §411.

In *Workmen's Compensation Appeal Board* & *Klebick v. Commonwealth of Pennsylvania*, 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975), the claimant's medical expert testified that Mr. Klebick "was totally and permanently disabled from coal worker's pneumoconiosis and that this condition is the result of his exposure to dusts while working in the coal mines." Based upon that testimony, we affirmed the board's award of benefits although Mr. Klebick, whose last day

of work was July 17, 1973, was exposed to the occupational hazard for only seventeen days after June 30, 1973. We stated:

> The uncontradicted medical testimony shows the claimant's total disability resulted from the *cumulative exposure* to a silica hazard during the 37 or 38 years he worked in the mines, ending July 17, 1973. Clearly this medical testimony is sufficient to show that the exposure after June 30, 1973, no matter how slight, was *in part* the cause of claimant's disability. This is all Section 301(c)(2) requires.

*Klebick,* 19 Pa. Commonwealth Ct. at 501-02, 338 A.2d at 760 (emphasis in original).

In the present case, Dr. Wald testified:

> A. Mr. Horne has 2 problems. He has asbestosis as well as a giant cell carcinoma of the lung.
>
> Q. Do you have an opinion within a reasonable degree of medical certainty as to what caused Mr. Horne's asbestosis?
>
> A. The asbestosis was caused by his exposure to asbestos fibers in his 27 years as an insulator.
>
> Q. Do you have an opinion, Doctor, within a reasonable degree of medical certainty what caused the giant cell carcinoma of the lung?
>
> A. This lesion was certainly in large part caused by his exposure to asbestos which is a known carcinogen. I cannot state that it was the only contributing factor since he also had been a cigarette smoker.

Despite that testimony, the referee, in Finding of Fact No. 14, stated:

> [T]he referee rejects Doctor Wald's opinion that the conditions were caused by 27 years of exposure to asbestos for the reason that *Claimant was subjected to minimal or no exposure to asbestos*

*after 1972,* Doctor Wald apparently not being aware of same. . . . (Emphasis added.)

However, in Finding of Fact No. 4, the referee wrote:

Claimant was exposed to an asbestos hazard from 1951 to in or about October 1972, *and possibly after October 1972 to November 1977 on a minimal and occasional basis,* OSHA having required the deletion and absence of asbestos containing materials in Claimant's occupation following October 1972. (Emphasis added.)

The referee erred as a matter of law by concluding that Mr. Horne failed to prove exposure to asbestos after June 30, 1973, because he found that Mr. Horne was in fact exposed to asbestos between October, 1972 and November, 1977, during his employment with three of the four defendant employers.

Moreover, the referee made other specific findings establishing exposure—albeit brief—after June 30, 1973:

Owens-Corning and AC&S

18. . . . Claimant's exposure to the hazard of asbestos following July 1, 1973 was limited to occasions when insulation installed prior to 1973 was removed or handled by the Claimant, possibly including one day's exposure while in the employ of Owens-Corning Fiberglas Corporation occurring in 1974 when cleaning up insulation . . .; and possibly a period of employment between August 18, 1976 and October 31, 1976 while in the employ of A C & S Inc. when he removed some insulation from pipes, tanks, vessels and turbines at the Martins Creek Power House on units # 1 and # 2. . . .[5]

---

[5] Regarding his exposure to asbestos while employed by A C & S, Mr. Horne testified:

The referee's Findings Nos. 17 and 18, negating exposure to asbestos hazards after June 30, 1973 while in the employ of Pacor, Inc. and Johns-Manville Sales Corporation, respectively, reflect the referee's power to de-

---

A. Sometime during the summer of 1976, I worked for AC&S at the Martins Creek Power House complex on Units 1 and 2, on the maintenance, and we removed asbestos from pipes and reinsulated, and some of the valves around the turbonator we put coatings of what we called insulating cement over some of the old asbestos and then new clothes applied on top of that.

. . . .

Q. During that job working for AC&S in Martins Creek, Pennsylvania, in 1976, was there asbestos fibers or dust emitted into your work atmosphere?

A. Yes.

Q. Did you inhale those asbestos fibers?

A. I am sure I did.

On cross-examination he testified:

Q. . . . Do you know whether that was the original insulation of the pipes or was that installed or repaired at some other time after the original installation?

. . . .

A. All that I worked on was the original.

Q. How do you know that?

A. Because the foreman that I worked for, he and I were working partners at the original job and we used to talk about how well the stuff lasted, so many years.

. . . .

Q. What did you do to the boiler walls?

A. Going in and removing the old insulation where there was leaks; and after they repaired them, we went back and reinsulated and put it back in its original condition.

Q. Do you know whether that was the original insulation on those boilers, or had that been replaced since the original insulation?

A. I'd say that was original.

Q. How would you know that?

A. By deterioration there.

Q. Was there any other evidence that it was original?

termine which testimony to believe, as to the former, and to disbelieve even uncontradicted testimony, as to the latter.

Our ultimate conclusions, however, are that the claimant proved by substantial evidence that he supplied the defendants with timely notice and that the findings confirm exposure to asbestos after June 30, 1973, while in the employment of defendants A C & S, Inc. and Owens-Corning Fiberglas Corporation.

Although Mr. Horne has proven timely exposure while employed by two different employers, section 301(c)(2) of the Act, 77 P.S. §411, directs that liability be incurred by a single employer only:

> The employer liable for compensation provided by section 305.1 or section 108, subsections (k) (l),[6] (m) (o) (p) or (q), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employe was exposed to the hazards of the disease claimed.

---

A. Even exterior finish, when we went in and tore it out, it still looked original.

. . . .

Q. Was there anything else? Did you make any tests or was there anything about the appearance of the product that would indicate that it was original?

A. Only that it just came off in pieces. You might say decayed.

Q. Based upon this, you're assuming that this was the original insulation on the boiler?

A. I'm sure it was original, sir.

[6] Section 108(1) of the Act, 77 P.S. §1208(1) designates "Asbestos in any occupation involving direct contact with, handling of, or exposure to the dust of asbestos" as an occupational disease.

In Finding of Fact No. 18, the referee found exposure while Mr. Horne was employed by Owens-Corning and AC&S, although in each case the employment was for less than one year. Therefore, the board must now determine in whose employ, Owens-Corning or AC&S, Mr. Horne was longer exposed to asbestos.

We remand for that purpose and additionally so that the board may compute benefits and appropriate attorneys' fees.

ORDER

NOW, July 8, 1986, the order of the Workmen's Compensation Appeal Board, No. A-86100, is vacated and remanded for a determination, consistent with this opinion, of the liability of either Owens-Corning Fiberglas Corporation or AC&S, Inc. and for a computation of benefits and attorneys' fees.

Jurisdiction relinquished.

---

DISSENTING OPINION BY JUDGE DOYLE:

Contrary to the majority's finding that there was no evidence whatsoever to suggest that Dr. Stull informed Mr. Horne that he suffered from asbestosis in 1977, is the Claimant's own testimony which the referee, as factfinder, chose to credit and which must be accepted. *Sokol v. Workmen's Compensation Appeal Board (State Regional Correctional Facility at Mercer)*, 91 Pa. Commonwealth Ct. 396, 497 A.2d 670 (1985).

Accordingly, I dissent.