Gregory H. SUPROCK, Petitioner,

v.

WORKMEN'S COMPENSATION AP-
PEAL BOARD (MILLERSVILLE UNI-
VERSITY OF PA.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 27, 1995.
Decided April 17, 1995.

Michael H. Ranck, for petitioner.

Thomas A. French, for respondent.

Before PELLEGRINI and FRIEDMAN,
JJ., RODGERS, Senior Judge.

FRIEDMAN, Judge.

Gregory H. Suprock (Claimant) appeals
from an order of the Workmen's Compensa-
tion Appeal Board (Board) affirming a refer-
ee's [1] denial of workers' compensation bene-
fits to Claimant. We vacate and remand.

Claimant was employed by Millersville
University of Pennsylvania (Employer) while
working under the second of two one year

---

1. Referees are now called Workers' Compensa-
tion Judges under the new amendments to the
Workers' Compensation Act effective August 31,
1993. However, because this case was before
the referee prior to the effective date of those
amendments, we will refer to the referee as such
and not as Workers' Compensation Judge.

contracts, teaching anatomy and physiology to nursing students. Claimant allegedly developed an asthmatic sensitivity to formaldehyde; however, he continued to work until the contract expired on May 22, 1987. In January 1988, Claimant filed a Petition for Compensation which did not include a claim for wage loss but sought to establish the causal connection between Claimant's condition and his work with Employer.[2] Employer answered, contending that Claimant was not disabled, that any injury or disease was non-occupational, that Claimant failed to give timely notice and that Employer may not have been the last exposing or responsible employer. A series of hearings were held before the referee.[3] During the course of the hearings, Claimant's counsel questioned whether the referee, who, at the time the hearings began, taught approximately one course per year in Employer's Industry and Technology Department, should recuse himself because of a conflict of interest.

On June 29, 1992, the referee issued a decision refusing to recuse himself and denying benefits. In support of his decision not to recuse himself, the referee noted that he had not taught at Employer since 1990 and that he did not know nor had he ever known or been acquainted with any of the parties or fact witnesses involved in the case. Based upon this reasoning, the referee determined that he was able "to make a fair and impartial evaluation of the evidence and testimony and render a just decision in this matter." (Referee's decision of June 29, 1992, at 3.)

The referee made the following pertinent findings of fact:

6. At approximately the same time that Mr. Suprock became aware that the position he filled would be changed to a tenure track position for which he was not qualified, the Claimant alleges that he began to develop an asthmatic sensitivity to formaldehyde. He had been exposed to substantial quantities of formaldehyde since high school without ever experiencing any adverse reaction; had a long history of recurring bronchitis, and when he initially saw his family doctor, his doctor diagnosed Mr. Suprock's problem as simple bronchitis. Shortly thereafter, in approximately November of 1986, Mr. Suprock's family doctor referred Mr. Suprock to Dr. Kauffman, who was an allergist and the Claimant submitted the deposition of Dr. Kauffman in support of his claim to asthmatic sensitivity to formaldehyde. The Claimant testified that when he went to see Dr. Kauffman on November 20, 1986, he suspected that his upper respiratory problems were caused by exposure to formaldehyde and he conveyed this suspicion to Dr. Kauffman.

7. Dr. Kauffman ran only one of the tests necessary to determine whether Mr. Suprock suffered from asthma as opposed to bronchitis (which produced a result that did not support a conclusion that he suffered from asthma), and ran none of the tests necessary to confirm whether Mr. Suprock's asthmatic reaction, if it existed, was caused by formaldehyde. In order to determine whether someone is suffering from bronchitis, a chest x-ray would be taken and the patient's sputum would be analyzed. The primary test for asthma would be to take a series of spirometry tests in order to determine changes in airflow under various circumstances, including the administration of asthma medication. The x-ray and sputum test was not done. The most specific method of indicating a diagnosis of asthma would be a methacholine challenge test. In this test, the patient is given a chemical called metha-

**2.** During the course of the hearings, Claimant amended his claim petition to include a claim for wage loss. The Amended Petition was dated July 16, 1990.

**3.** The referee held the initial hearing in the case on March 1, 1988. A second hearing was held on July 14, 1988. After several postponements, a third hearing took place on March 6, 1990. Several more hearings, the last on January 14, 1992, followed. During these hearings, Claimant testified before the referee five times and also presented testimony of two fellow employees with Employer, Dr. Katherine Baker, a Ph.D. in Ecology and Organic Biology, and Dr. Larry Lewis, a Ph.D. in Biology. In addition, Claimant presented the medical testimony of Dr. Clark R. Kauffman, M.D., an allergist who had diagnosed Claimant's condition. Employer presented the testimony of four fact witnesses but did not present any medical witnesses.

choline in order to determine the amount of the chemical required to cause wheezing. Dr. Kauffman did not run a methacholine challenge test on Mr. Suprock. An additional test for asthma is to have the patient exercise for 10 to 15 minutes in order to see if the exercise induces asthma. Dr. Kauffman did not run such a test, and Mr. Suprock informed him that exercise did not trigger his asthma. Dr. Kauffman did not run a urine test on Mr. Suprock in order to determine the level of formaldehyde in his urine. A rast test is a laboratory test designed to identify an allergy to a specific substance and Dr. Kauffman did not run a rast test on Mr. Suprock.

8. The sole basis for Dr. Kauffman's diagnosis that the Claimant had an asthmatic sensitivity to formaldehyde was Mr. Suprock's statement that when he was in the presence of formaldehyde his symptoms increased, and that when he was away from formaldehyde, his symptoms decreased. In November of 1985 [sic], after completing his examination of Mr. Suprock, Dr. Kauffman informed both Mr. Suprock and Mr. Suprock's family doctor, Dr. Schrock, that Mr. Suprock was suffering from an asthmatic sensitivity to formaldehyde and advised Mr. Suprock to avoid formaldehyde exposure.

9. This Referee finds that the medical opinion of Dr. Kauffman, that the Claimant developed an asthmatic sensitivity to formaldehyde due to his workplace exposure to formaldehyde was not credible and is rejected.

10. Dr. Kauffman's diagnosis was conveyed to Dr. Schrock by a November 28, 1986 letter to him and to Mr. Suprock orally at about the same time.

11. Mr. Suprock's injury[4] occurred on November 28, 1986, the date on which Dr. Kauffman confirmed that Mr. Suprock's previous bronchial attacks were the result of Mr. Suprock's asthmatic sensitivity to formaldehyde. Despite Mr. Suprock's alleged allergic reaction to formaldehyde, he continued to work at the University until the expiration of his 1986–1987 contract on

May 22, 1987 and did not suffer (and is not claiming to have suffered) a diminution in his earning capacity during the term of his contract at Millersville.

. . . .

13. This Referee finds that [Employer] first received notice of Mr. Suprock's claimed injury on April 23, 1987, when Mr. Suprock informed Dr. Ha that he was suffering from an asthmatic sensitivity to formaldehyde.

Based upon these findings, the referee concluded that Claimant had failed to meet his burden of proving a work-related injury and that Claimant was not entitled to workers' compensation benefits, that Claimant had failed to satisfy the notice requirements of section 311 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 631, because he failed to notify Employer of his claimed work-related injury within 120 days of November 28, 1986 and that Claimant was not disabled as defined in the Act because his wages before and after his alleged injury remained constant until interrupted by the expiration of his contract.

Claimant appealed to the Board which affirmed the referee. The Board concluded that Claimant failed to prove by unequivocal medical testimony that Claimant's asthmatic condition was work-related. As to the recusal and notice issues, the Board cursorily addressed whether the referee should have recused himself, and held, without any discussion of the issue, that "the [referee] remained unbiased and impartial throughout these proceedings and we shall not remand this matter on this issue." (Board's op. at 4.) The Board did not address the notice issue, determining that because Claimant failed to meet its burden of proof, the notice issue was moot.

▇▇▇ On appeal to this court, Claimant contends that the referee had a conflict of interest and should have recused himself from the case, that the referee capriciously

4. We read the referee's reference to "injury" to mean "alleged injury." Read this way, it is not inconsistent with the referee's rejection of Dr. Kauffman's opinion as not credible.

disregarded[5] competent medical testimony that Claimant's asthmatic sensitivity to formaldehyde was work related, and that the referee erred in determining that Claimant failed to satisfy the 120 day notice requirement. Because we cannot reverse the findings of the referee if a reasonable mind could find as the referee did, the impartiality of the referee is crucial.

■ As to Claimant's first issue, we agree with Claimant that the referee improperly refused to recuse himself. The regulations governing workers' compensation hearings require a referee to "conduct a fair and impartial hearing" (34 Pa.Code § 131.54); however, the regulations do not delineate when a referee should recuse himself nor do they indicate how to challenge a referee's decision that he can be fair and impartial. Our case law provides guidance in filling this gap.

In *Kinter v. Workmen's Compensation Appeal Board (R.D. Werner Co.)*, 134 Pa.Commonwealth Ct. 541, 579 A.2d 1010 (1990), *appeal denied*, 527 Pa. 595, 588 A.2d 915 (1991), a claimant whose benefits had been terminated claimed that the referee had a conflict of interest because the referee had sought and received personal legal assistance from a member of the same law firm that represented the employer. Over the course of more than four years, the referee had met three times with a member of the law firm and that lawyer had written three letters on the referee's behalf. Although the employer filed a termination petition during this time, the referee actually issued his decision after his relationship with the law firm had ceased. The Board concluded that "there was no conflict of interest warranting [the] recusal" of the referee. On appeal, this court disagreed, stating that the referee "must avoid *even the appearance of possible prejudice.*"

*Id.* at 545–46, 579 A.2d at 1012. "Because of [the referee's] then-existing relationship with the law firm which simultaneously represented a party before the referee in this workers' compensation case, [we held that] there was an appearance of conflict of interest or prejudice during the period that the referee had an attorney-client relationship with that firm." *Id.* Timing was critical to our determination that a conflict of interest existed in *Kinter.*

Indeed, we reached a different result in *Allen v. Workmen's Compensation Appeal Board (Leathercraft Co.)*, 150 Pa.Commonwealth Ct. 302, 615 A.2d 927 (1992), where the law firm representing the employer had *previously* represented the referee in an estate matter, and there was only an insubstantial involvement of the law firm, in the form of a brief exchange of correspondence, thereafter. Distinguishing *Kinter*, we concluded that "unlike *Kinter*, no substantial attorney-client relationship existed between the referee and the law firm representing the employer during these worker's compensation proceedings." *Allen*, 150 Pa.Commonwealth Ct. at 308, 615 A.2d at 930.

■ Here, Claimant had held a temporary appointment in Employer's Biology department, and, *at the time these workers' compensation proceedings were initiated* against Employer, the referee taught approximately one course a year in Employer's Industry and Technology Department. Although the relationship between the referee and Employer ended before the referee issued his decision, the same was true in *Kinter* where the relationship between the referee and the law firm ended before the conclusion of the proceedings. The question, then, is whether the referee's employment relationship with Employer was substantial enough to require the referee's recusal.[6]

---

**5.** We note that Claimant misconstrues our scope of review. The capricious disregard standard applies where the party with the burden of proof is the *only* party to present evidence and yet loses before the factfinder. *Iacono v. Worker's Compensation Appeal Board (Chester Housing)*, 155 Pa.Commonwealth Ct. 234, 624 A.2d 814 (1993), *affirmed*, 536 Pa. 535, 640 A.2d 408 (1994). Where, as here, both parties present evidence before the factfinder, our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *M & D Auto Body v. Workmen's Compensation Appeal Board (Pallott)*, 143 Pa.Commonwealth Ct. 346, 599 A.2d 1016 (1991), *appeal denied*, 532 Pa. 658, 615 A.2d 1314 (1992).

**6.** Conflict of interest cases which create an appearance of possible prejudice appear to be treat-

We conclude that it was. Because witness credibility is not subject to our review, it is extremely important to have an unbiased factfinder and, similarly, because we cannot reverse the referee's findings of fact if a reasonable mind could have found as the referee did, the impartiality of the factfinder is crucial.[7] The importance of an impartial referee is underscored here where the credibility of witnesses and findings of fact as to dates of injury and notice determined the ultimate result. Thus, the referee's relationship with Employer created an appearance of a conflict of interest which placed the impartiality of the referee in question and tainted the proceedings.

Accordingly, we vacate the Board's order and remand the case to the Board with direction to assign the case to a new referee for a determination based upon the existing record. The new referee must make independent findings of fact as to the credibility of Dr. Kauffman's medical opinion, the dates of injury and notice and the reason for Claimant's loss of earnings.

### ORDER

AND NOW, this 17th day of April, 1995, the order of the Workmen's Compensation Appeal Board, dated July 19, 1994, is vacated and the case is remanded to the Workmen's Compensation Appeal Board with direction to assign the case to a new Workmen's Compensation Judge for a new determination consistent with this opinion within ninety days of the Board's order.

Jurisdiction relinquished.

---

ed differently from cases where a claim of bias or prejudice is independent of such a conflict. In bias cases, at least where a trial court is involved, "it is presumed that a trial judge is capable of recognizing in himself/herself the symptoms of bias and prejudice. If the judge believes that he or she can hear and dispose of the case without partiality, then that decision will not be overturned, absent an abuse of discretion." *Borough of Kennett Square v. Lal*, 165 Pa.Commonwealth Ct. 573, 581, 645 A.2d 474, 478 (1994). To overcome the presumption, we usually require bias to be shown on the record, as was the case in *Republic Steel Corporation v. Workmen's Compensation Appeal Board*, 54 Pa.Commonwealth Ct. 113, 420 A.2d 37 (1980). In conflict of interest cases, however, we look to whether the relationship complained of creates an *appearance* of *possible* prejudice, not whether *actual* prejudice is shown. *Kinter*. Also, on a related issue, we have distinguished workers' compensation cases, where the referee serves as fact finder, from a jury trial and have noted that the remedial purposes of the workers' compensation law may not always be served by applying the same rules as in a trial court. *M & D Auto Body*.

7. The referee is the final arbiter of witness credibility and of the weight to be applied to the evidence and may accept or reject the testimony of any witness, in whole or in part, even if that testimony is uncontradicted. *Hills Department Store No. 59 v. Workmen's Compensation Appeal Board (McMullen)*, 166 Pa.Commonwealth Ct. 354, 646 A.2d 1272 (1994), *petition for allowance of appeal denied*, — Pa. —, 655 A.2d 518 (1995); *Volkswagen of America v. Workmen's Compensation Appeal Board (Russell)*, 143 Pa.Commonwealth Ct. 69, 598 A.2d 602 (1991).