Isabella C. Leonard, Widow of Roy G. Leonard, Petitioner v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Automotive Maintenance Inc., d/b/a Chadderton Trucking, Respondents.

Argued June 4, 1981, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*David J. Graban, Fruit, Dill, Goodwin & Scholl,* for petitioner.

*Joseph F. Grochmal,* with him *Roy F. Walters, Jr., Fried, Kane, Walters & Zuschlag,* for respondent, Automotive Maintenance Inc.

OPINION BY JUDGE CRAIG, August 10, 1981:

Isabella Leonard, claimant-widow of Roy G. Leonard, questions a denial of benefits by the Workmen's Compensation Appeal Board, reversing a referee's decision which had awarded compensation on the basis of her fatal claim petition.

The decedent, employed by Automotive Maintenance, Inc. (employer), died on February 16, 1977.

At the hearing, a co-worker testified that he and the decedent were working outdoors, with eight inches of snow on the ground and temperatures in the thirties. They removed a fuel tank from a truck by burning off the bolts, then rolled it about ten or fifteen feet. The co-worker stated that the tank was "pretty heavy"; he estimated that it weighed "somewhere between a hundred, a hundred fifty pounds."

The two took a coffee break in the warm cab of the truck they had driven to the scene, then prepared to remove the steering box from the truck by crawling underneath to locate and check the part. The co-worker stated that the decedent, who had crawled out to

retrieve the torch, fell over and began gasping for breath, groaning, shaking and shivering. Ambulance attendants, immediately called, concluded that death had occurred.

The claimant testified that the decedent was 51 years old when he died, was taking medication to control his cholesterol level, and that, as the result of several hernia operations, was not supposed to lift heavy objects. She stated that he was under stress because of personality conflicts with other employees.

The claimant submitted into evidence a copy of the death certificate, signed by a lay deputy coroner, which listed as the cause of death "Acute Coronary Occlusion." Counsel for the employer objected to that conclusion because the coroner had not performed an autopsy.

The deposition of the decedent's doctor revealed that he treated the decedent in September of 1974 for elevated blood fat levels, a rapid heartbeat and a lung infection. The doctor stated that he considered the decedent to be a coronary candidate, and that he had advised the decedent that "his risk of future coronary disease was great."

Counsel for the claimant asked the doctor if he had reviewed the transcript of the co-worker's testimony and that of the claimant; the doctor answered affirmatively. Counsel then recited the sequence of decedent's activities immediately before his death, and asked: "Now, Doctor, under the circumstances that I've just recited, would you be willing to agree with the diagnosis as to the cause of death, as set forth in the death certificate, that is, the cause of death being acute coronary occlusion?"

The doctor agreed.

Counsel then presented a hypothetical question to the doctor, incorporating all the events revealed by the previous testimony, asking whether he could state

"with any reasonable degree of medical certainty that the heart attack and acute coronary occlusion which killed Roy Leonard was causally connected with and directly related to his work and employment of that date . . .?"

The doctor opined that "this is true, that [the decedent] died as the result of exertion and stress put on him that day . . . it was a work-related thing . . . due to the cold and the exertion that he put forth."[1]

Later testimony revealed that the doctor last examined the decedent on March 9, 1975—nearly two years before his death—and that the doctor's license had been suspended at one time for a felony conviction of selling barbiturates.

The employer offered no testimony, medical or otherwise.

The referee awarded compensation, finding that the decedent, "during the course of his employment . . . died as a result of 'Acute Coronary Occlusion,' as stated on the death certificate," and that "the fatal heart attack . . . occurred in the course of his employment and was caused by his employment."

The board reversed[2] on two grounds. Because the death certificate was certified by a layman "unquali-

---

[1] The doctor restated the same conclusion several times:

Well, in my opinion, you have a man here who is a coronary candidate because of other physical factors, and he is given a special job out in the cold element, given unusual exertion as compared to working inside the garage, and I think this resulted in overtaxing his heart.

. . . .

In my opinion, the stress of his job on that day caused his coronary occlusion.

[2] The board substituted as its findings and conclusion:

2. Claimant introduced into evidence a death certificate setting forth that the Decedent, Roy G. Leonard, died as a result of an acute coronary occlusion. Said death certificate was certified to by a layman and not a physician.

fied to make a medical conclusion,'' it found that the referee's finding as to cause of death was based on incompetent medical evidence. In addition, the board held that the doctor's testimony was incompetent because of his felony conviction and the remoteness of his last examination of the decedent.

We note that the board, when taking no additional evidence, is bound by the referee's findings which are supported by substantial evidence, *Workmen's Compensation Appeal Board v. Vivis*, 23 Pa. Commonwealth Ct. 134, 350 A.2d 462 (1976).

The board was correct in considering the death certificate to be incompetent evidence to support the referee's finding as to cause of death. *See Kubacki v. Metropolitan Life Insurance Co.,*[3] 193 Pa. Superior Ct. 138, 145, 164 A.2d 48, 53 (1960).

However, the board apparently did not consider that the cause-of-death finding could be upheld on the basis of the physician's testimony. The doctor's opin-

---

9. The death of Roy G. Leonard, Decedent, was not shown to have resulted in the course of his employment. The cause of death of said Decedent is unknown.

### CONCLUSION OF LAW

2. The Claimant, having failed to prove that the death of the Decedent was work related, is not entitled to compensation.

[3] *See also, Hauck v. Workmen's Compensation Appeal Board*, 47 Pa. Commonwealth Ct. 554, 408 A.2d 585 (1979), where we stated: The weight of authority in Pennsylvania, however, is that a properly authenticated death certificate is generally admissible as proof, albeit not conclusive, of both the fact and cause of death. (Citations omitted.) If, however, there is some reason to suspect the trustworthiness of facts asserted in the certificate or the competency of its author, the certificate is not competent evidence of the facts in question. 47 Pa. Commonwealth Ct. at 557, 408 A.2d at 587. Applying those principles to this case, we agree that the lack of an autopsy, coupled with the lay status of the certificate's preparer, render the asserted facts less than trustworthy.

ion, based on the facts elicited by the previous testimony and his knowledge of the decedent's physical condition, was wholly distinct from the death certificate and was not dependent upon it.

The doctor's testimony was not rendered incompetent by his felony conviction, *Commonwealth v. Clemmer,* 190 Pa. 202, 42 A. 675 (1899), nor by the length of time elapsed from his last examination of the decedent. Those matters relate to credibility and the weight to be accorded the testimony. The referee apparently credited the doctor's statements with some degree of veracity in spite of those factors; the board cannot disturb that judgment once made. *Republic Steel v. Workmen's Compensation Appeal Board,* 54 Pa. Commonwealth Ct. 113, 420 A.2d 37 (1980).

Therefore, because the record contained sufficient competent evidence to support the referee's finding that the decedent's cause of death was acute coronary occlusion, the board erred in substituting its finding on that issue for that of the referee. *David v. Bellevue Locust Garage,* 12 Pa. Commonwealth Ct. 602, 317 A.2d 341 (1974).

The issue of whether decedent's death was in the course of his employment and was caused by his employment is a question of law, properly considered by the board in its review. *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973); *David v. Bellevue Locust Garage.*

The claimant's medical testimony—uncontradicted by the employer—also established the causal connection between the employment and decedent's death. The doctor's unequivocal response to the hypothetical question posed by claimant's counsel was sufficient to establish the causal relationship, and the board erred in concluding that the claimant failed to fulfill her burden of showing that connection.

Accordingly, we reverse the board's substitution of its findings and conclusions of law and reinstate the referee's findings Nos. 2 and 9 and conclusions of law.

ORDER

AND Now, August 10, 1981, the order of the Workmen's Compensation Appeal Board, No. A-77635, dated July 17, 1980, is reversed, and the findings and conclusions of the referee are reinstated.

Judgment is to be entered in favor of claimant Isabella C. Leonard, widow of Roy G. Leonard, and against Automotive Maintenance, Inc., d/b/a Chadderton Trucking and its insurer Pennsylvania National Insurance Co., in the following amounts:

1. Compensation in the amount of $125.46 per week, beginning February 17, 1977, and continuing within the terms and limitations of The Pennsylvania Workmen's Compensation Act.

2. Deferred payments of compensation shall bear interest at the rate of 10% per annum.

3. Reimbursement for burial expenses in the amount of $1,500.

4. Reimbursement for airfare to New Mexico, legal counsel in New Mexico, expert witness fee cost, and cost of deposition in the total amount of $556.60.

5. Automotive Maintenance, Inc. and its insurer are ordered to deduct from any and all payments due the claimant, now and in the future, a sum equivalent to 20% thereof, and to remit the same with the same frequency to David J. Graban, Esq., 120 E. State Street, Sharon, Pa. 16146, counsel for claimant, as an approved fee for his representation of her in these proceedings.