**VERIZON PENNSYLVANIA, INC., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GUY-DERS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 26, 2010.

Decided July 19, 2010.

Dennis R. Sheaffer, Harrisburg, for petitioner.

Gerald F. Strubinger, Jr., Palmerton, for respondent.

BEFORE: COHN JUBELIRER, Judge, LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Verizon Pennsylvania, Inc. (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying its petition to modify or suspend the workers' compensation benefits of Agnes Guyders (Claimant). In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Employer's 73 job referrals over the course of three years were, for the most part, invalid because they were made more than six months after the medical examination clearing her for work had been done. Concluding that there is no substantial evidence to support the WCJ's finding that this medical examination had no value af-ter six months, we will reverse and remand.

Claimant began working for Employer in 1962 as a telephone customer service representative, a job that required, *inter alia,* data entry. In 1994, Claimant began collecting disability compensation at the rate of $493 per week as a result of her work-related carpal tunnel syndrome. In 2006, Employer filed a petition to suspend or modify benefits, alleging that work was available to Claimant and that Claimant had failed to make a good faith effort to pursue the jobs to which she had been referred. Claimant denied these allegations, and a hearing was held before the WCJ.

At the hearing, Employer presented the 2007 deposition testimony of Lawrence E. Weiss, M.D., who testified that he conducted an independent medical examination (IME) of Claimant on October 27, 2003. Dr. Weiss concluded that Claimant had not fully recovered from her work injury; however, she had reached maximum medical improvement and no longer required medical treatment. Dr. Weiss opined that Claimant was capable of returning to work full-time, so long as she refrained from repetitive motions and lifted no more than ten pounds. Dr. Weiss then testified about the 73 jobs to which Claimant had been referred from 2003 to 2006 by JOA Case Management Solutions (JOA), Employer's consultant. Dr. Weiss reviewed the job descriptions of all 73 positions, and he found each one to fall within Claimant's physical capabilities.

On cross-examination, Dr. Weiss acknowledged that his 2003 IME report had restricted Claimant to occasional lifting and carrying of objects under ten pounds. On a November 18, 2003, physical capacity form, however, he had restricted her to lifting no more than five pounds. Dr. Weiss acknowledged that he had not seen

Claimant since 2003 or reviewed her post–2003 medical records.

Robert Murphy, an employment consultant with JOA, testified about his vocational assessment of Claimant in October 2003. Because Claimant refused to meet with him, Murphy used Dr. Weiss' 2003 IME report to assess Claimant's physical limitations. Murphy then located jobs within Claimant's abilities and scheduled appointments for Claimant to complete an employment application. He notified Claimant in writing of each appointment, approximately one to two weeks in advance. Murphy then sent each job description to Dr. Weiss for his review and approval.

From November 2003 to February 2006, Murphy scheduled 73 appointments for Claimant.[1] For each, Murphy sent Claimant a letter providing the time and place of the appointment. The letter instructed Claimant to dress appropriately in case the prospective employer wanted to interview her. Claimant was further instructed to call JOA if she could not attend the appointment. Murphy mailed each of the 73 prospective employers a form, seeking verification that Claimant had completed an application and questioning whether she was being considered for the job. Claimant did not attend 32 appointments.[2] Murphy testified that Claimant did not dress appropriately when she kept the appointments. However, Murphy acknowledged that he had observed her at only one of the scheduled appointments. This was on March 30, 2004, for a hotel desk clerk position, where Claimant appeared wearing jeans and sneakers.

Jim Kelly, an observer hired by JOA on a case-by-case basis, also testified. He explained that Claimant routinely appeared at her scheduled appointments wearing sneakers, a sweatshirt and jeans or leggings; always wore braces on her wrists; often wore braces on her legs; and often had unkempt hair. Kelly testified that Claimant failed to appear at approximately 18 to 20 of the scheduled appointments he observed.

Finally, Employer presented testimony from two of the prospective employers to whom Claimant had been referred by Murphy. Sharon Starkes testified that she was the manager of Joan Fitzgerald Real Estate, Ltd., which had a secretary receptionist opening from August 13, 2004, until October 8, 2004. Lorraine Hamel, D.M.D., confirmed that she had a receptionist position available in her dental office from August 26, 2005, through September 7, 2005.

Claimant presented the testimony of Calvin F. Anderson, a self-employed rehabilitation specialist and vocational expert. Anderson testified that of the 73 jobs Murphy selected for Claimant, only one fell within her physical capabilities and her area of expertise: a customer service representative for Blue Ridge Communications. Anderson opined that the remaining jobs were not suitable because they required repetitive hand actions or knowledge beyond Claimant's abilities. On cross-examination, however, Anderson admitted that the clerical positions at Joan Fitzgerald Real Estate Ltd. and Lorraine Hamel, D.M.D., fell within Claimant's physical and educational abilities.

---

1. All 73 referral letters were presented and explained at the hearing. In its appeal to this Court, Employer only specifically references three of the referral letters. We will limit our factual recount accordingly.

2. Murphy's testimony detailed each of the job referrals and whether or not Claimant reported as scheduled, but he did not provide a tally regarding how many Claimant failed to attend. The WCJ calculated the number to be 32.

Anderson opined that a medical examination becomes outdated within six months to a year because a claimant's physical condition may change, noting that Dr. Weiss had not examined Claimant since October 2003. Further, Anderson pointed out the discrepancy in the lifting restriction between Dr. Weiss' 2007 deposition testimony and his 2003 physical capacities report.

Claimant testified on her own behalf, explaining that in 1994 she was diagnosed with bilateral carpal tunnel syndrome. In spite of repeated hand surgeries, she continues to experience numbness and tingling in both hands and has difficulties with her hand grip, which causes her, at times, to drop items and impedes her ability to complete everyday household chores. After an automobile accident in 2003, Claimant underwent physical therapy for both hands for approximately one year.[3] When asked if she was still treating for carpal tunnel, Claimant replied, "I have reached the maximum, so basically there is no other treatment." Reproduced Record at 1107a (R.R.____). Claimant stated that her carpal tunnel symptoms have not changed since 1997.

Claimant testified that she also has knee problems which required surgery in 1990, and in 2007 she underwent a replacement of both knees. Claimant stated that she has worn a right leg brace since 1990 due to a "drop foot." R.R. 1210a. She also stated that she wears a brace on her left knee, due to support problems. Claimant claimed that the braces on her wrists and her legs have been medically prescribed.[4]

With respect to the 32 appointments that she failed to attend, Claimant explained that her 2003 automobile accident, which left her without transportation for several weeks, caused her to miss many of those appointments. Some appointments were missed because of a death in the family, and still others were missed because they conflicted with her physical therapy sessions. Claimant called JOA to reschedule the missed appointments, and some were rescheduled by Murphy.

Claimant was asked about an appointment at Joan Fitzgerald Real Estate, Ltd. scheduled for August 27, 2004. Claimant explained that she did not attend because she had planned to spend time that day visiting local attractions with her daughter and grandchildren, who were visiting from New York. Claimant testified that they "probably had tickets to go someplace," but she could not recall what they did on the day of the Fitzgerald Real Estate appointment. R.R. 1259a. Claimant asserted that she called Murphy and cancelled the appointment.

Claimant was also asked about an appointment scheduled with Dr. Hamel for September 7, 2005. Claimant explained that she did not attend because her sister-in-law had died on August 24, 2005, and she was in New York with family. Claimant returned home from New York on September 5, 2005, to keep an appoint-

---

3. Claimant testified that she was in a car accident on the way to her first scheduled job application appointment on November 26, 2003. She explained that the road was icy and her car skidded and hit a tree. Despite the accident, she was able to drive the car to the scheduled appointment.

4. Claimant did not specify her medical instructions regarding use of the braces. While Employer elicited much testimony regarding

Claimant's use of the braces and her appearance at the interviews, in its appeal to this Court, Employer does not argue that Claimant acted in bad faith due to her physical appearance at the interview. Instead, Employer argues that Claimant acted in bad faith by not attending two of the job referrals and for stating that she was disabled on one of the job applications.

ment with Terminex the following day at her house. Upon her return home, she discovered the letter scheduling the appointment with Dr. Hamel. Claimant admitted she could have attended it, but she wanted to return to New York that day. Accordingly, she called Murphy and informed him she would not attend the appointment.

With respect to a job application Claimant submitted to Blue Ridge Communications on February 12, 2004, she was asked why she wrote on the application that she was disabled and unable to work. According to Claimant, where an application asked why she left her prior employment, it was her practice to reply "disabled." Claimant denied ever telling a prospective employer that she was unable to work.

The WCJ found Anderson's testimony more credible and persuasive than Murphy's. The WCJ also found Claimant credible. As for Dr. Weiss, the WCJ accepted as credible his opinions regarding Claimant's ability to perform various jobs, but only for the period of time from October 2003 through April 2004. Because Anderson had stated that medical referrals tend to become "stale" after six months to a year, the WCJ decided that Dr. Weiss' IME became useless after six months. The single job available to Claimant within six months of Dr. Weiss' IME was the customer service representative position with Blue Ridge Communications. Although Claimant wrote on her application

that she was disabled, the WCJ found that this response did not evidence bad faith. The WCJ further noted that the evidence was unclear whether Claimant wore braces outside her clothing to this interview.

 The WCJ denied Employer's modification and suspension petition. Employer appealed to the Board. The Board affirmed the order of the WCJ, concluding that Employer did not meet its burden of proving that work Claimant was capable of performing was available to her. Employer now petitions for this Court's review.[5]

Employer raises three issues. It first contends that there is no authority for the WCJ's conclusion that any job referral made more than six months after Dr. Weiss' IME was invalid. Second, it contends that the evidence shows that Claimant acted in bad faith by failing to attend two of the job appointments. Third, it contends that Claimant acted in bad faith by reciting on a job application that she was disabled.

 This case is governed by *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), which established the elements of an employer's burden to show job availability to a claimant.[6] Under *Kachinski*, an employer must establish (1) that claimant's medical condition allows him to return to work, and (2) that jobs within the claimant's physical ability are available. *Id.* at 252, 532 A.2d at 380.

5. Our scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence of record. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558, 561 (Pa. Cmwlth.1997).

6. In Act 57 of June 24, 1996, P.L. 350, the General Assembly reduced an employer's burden for obtaining modification or suspension

of benefits by adding subsection (2) to Section 306(b) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(2). *Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.)*, 603 Pa. 74, 981 A.2d 1288, 1292 n. 8 (2009). However, *Kachinski* continues to apply to cases where the claimant's injury occurred prior to June 24, 1996. *Id.* Thus, Claimant's case is governed by *Kachinski*, not Act 57.

Once the employer has met this burden, the burden shifts to the claimant to establish that he made a good faith effort to follow up on the job referrals. *Id.*

In its first issue, Employer argues that the WCJ erred in finding the job referrals made to Claimant more than six months after Dr. Weiss' October 2003 IME were of no moment because they were based on "stale" medical information. Employer contends that neither statutory nor case law establishes such a time limit upon the continued viability of an IME.

In support, Employer directs us to *Saunders House v. Workmen's Compensation Appeal Board (Russell),* 156 Pa. Cmwlth. 505, 628 A.2d 488 (1993). In *Saunders House,* an employer sought to modify benefits based on a claimant's refusal to accept medically approved employment. We held that the claimant's refusal constituted grounds to grant a modification petition. Employer argues that because the job referrals at issue were based on an IME that was more than a year old, *Saunders House* directly refutes the premise that an IME expires after six months. However, the issue in *Saunders House* was whether the claimant received notice that she was medically cleared to return to work, not the continued viability of an IME after six months.

Claimant counters that this case is governed by *Leonard v. Workmen's Compensation Appeal Board,* 61 Pa.Cmwlth. 200, 433 A.2d 572 (1981). In that case, a widow filed a fatal claim petition asserting that her husband's heart disease and fatal heart attack were work-related, which was supported by expert medical opinion. The employer did not present any medical evidence, but argued that the claimant's medical evidence was incompetent because her medical expert had not seen the decedent within two years before his death. This Court held that the timeliness of the examination went to the weight and credibility of the testimony, not its competency.

We agree, of course, that the WCJ "has exclusive province over questions of credibility and evidentiary weight." *Newcomer Products v. Workers' Compensation Appeal Board (Irvin),* 826 A.2d 69, 74 (Pa.Cmwlth.2003). However, all factual findings must be based upon substantial evidence, which is that evidence a reasonable person would use to find facts. *Locher v. Workers' Compensation Appeal Board (City of Johnstown),* 782 A.2d 35, 38 (Pa.Cmwlth.2001).

Here, the WCJ found that Claimant was free to ignore Employer's referrals after April 2004 when Employer's IME became "stale." The WCJ explained that

[w]ithout an updated examination, Dr. Weiss' opinion that Claimant could have performed various jobs he approved more than six (6) months after his October 2003 exam is based on stale information and, therefore, not credible.

WCJ Decision, December 23, 2008, at 13; R.R. 46a. This finding was based on Anderson's statement that before he makes a job referral he prefers to have a doctor's report that was done within six months to a year of the referral. There are several problems with the WCJ's conclusion that Dr. Weiss' IME became invalid after six months.

First, Anderson is not a physician and is simply not competent to render an opinion that an IME of a claimant, who has reached maximum medical improvement of her work-related carpal tunnel syndrome, must be done every six months. *Craftex Mills, Inc. of PA v. Workers' Compensation Appeal Board (Markowicz),* 901 A.2d 1077, 1081 (Pa.Cmwlth.2006) (explaining that a witness may only offer expert testimony regarding matters in which he is

qualified as an expert). Even so, Anderson spoke only in generalities and not about Claimant's specific work injury. Logically, the need for a new IME will be different in each case, depending on the work injury and depending on the claimant's condition. For example, should a claimant's work-related condition change shortly after an IME, that IME could become "stale" well before six months have passed. On the other hand, if the claimant's condition remains stable, there is no reason why IME results would not enjoy continued validity. Here, Claimant had reached maximum medical improvement, suggesting that her condition could only improve with time, not get worse.

Second, Anderson actually agreed that Claimant was employable and capable of working within the medical restrictions provided by Dr. Weiss. Anderson's statement that the doctor's report became invalid after six months to a year was no more than speculation, which does not constitute substantial evidence of record. *Maroski v. Workers' Compensation Appeal Board (Bethlehem Steel Corporation)*, 725 A.2d 1260, 1264 (Pa.Cmwlth.1999). Even so, Anderson did not rely upon his own speculation.

Third, the WCJ's decision to place a six-month expiration date on Dr. Weiss' IME results was simply arbitrary. Anderson said that IMEs, in his view, became stale within six months *to a year*, and the WCJ arbitrarily chose the shorter period. It was also arbitrary because Dr. Weiss testified that at the time of the IME, Claimant had reached maximum medical improvement and needed no further medical treatment. This was not refuted by Claimant.

She did not produce any medical evidence, and she did not show a change in her condition subsequent to the IME. Indeed, she herself testified that her work injury did not change after 1997.

■ In sum, substantial evidence does not support the WCJ's determination that Dr. Weiss' IME report expired after six months.[7] This was error. Accordingly, a remand will be required so that the WCJ can make a determination under *Kachinski* on the job referrals that were not considered by the WCJ because they were made more than six months after Dr. Weiss' exam.

We turn, next, to Employer's second assignment of error, *i.e.*, that the WCJ erred by finding that Claimant's failure to attend scheduled appointments with Joan Fitzgerald Real Estate, Ltd. on August 27, 2004, and Lorraine Hamel, D.M.D. on September 7, 2005, did not evidence bad faith. Both referrals fell more than six months after Dr. Weiss' October 2003 IME and, as such, the WCJ made no findings of fact or conclusions of law as to these to job referrals. Again, a remand is necessary so the WCJ can make the determination required by *Kachinski.*

■ In its last issue, Employer argues that Claimant acted in bad faith in pursuing a job with Blue Ridge Communications because she wrote on the job application that she was "disabled and cannot work." Employer did not present a copy of the application or testimony from a representative of Blue Ridge Communications. Instead, Employer introduced a copy of a form, provided by JOA, stating that Claimant "wrote on her application that she is

---

7. A holding that IME results become unusable after six months, even where the claimant's condition remains stable, would have the practical result of subjecting a claimant to serial IMEs by an employer in order to prevent a staleness claim. This would cause inconvenience to the claimant and additional expenses for the employer and would serve no legitimate purpose.

disabled and cannot work."[8] R.R. 414a. The verification statement from Blue Ridge Communications stated that "Applicant writes reason for leaving last job as 'carpal tunnel-disabled.'" R.R. 416a.

Claimant explained that whenever an employment application contained a question as to why she left her prior employment, she replied "disabled." Claimant acknowledged that she wrote "carpal tunnel, hyphen, disabled" on the Blue Ridge application. R.R. 1240a. However, she also testified that

> I never told them I was unable to perform the position. The only part that I put in disabled was my reason for leaving my prior employment. I didn't get fired. I didn't retire. I went out on a disability.

R.R. 1242a. The WCJ credited this testimony. Because Claimant's explanation was accepted, we cannot say the WCJ erred in finding that Claimant did not act in bad faith with respect to her job application with Blue Ridge.

For the foregoing reasons, the order of the Board is affirmed in that part which relates to the Blue Ridge Communications application. The order of the Board is reversed in that part which imposes a six-month expiration on Employer's IME. This matter will be remanded to the Board with instructions that it be remanded to the WCJ in order to make factual findings and conclusions of law as to the jobs not previously considered, i.e., the job referrals that occurred more than six months after the October 2003 IME.

### ORDER

AND NOW, this 19th day of July, 2010, the order of the Workers' Compensation

Appeal Board dated November 29, 2009, in the above-captioned matter is AFFIRMED in part and REVERSED in part and REMANDED in accordance with the foregoing opinion.

Jurisdiction relinquished.

---

**8.** While Employer references this form in support of its allegation of error, Employer fails to explain how the form constitutes valid evidence as to what Claimant wrote on her employment application. The form merely recounts a purported telephone discussion between someone named "Donald" and the unknown author of the form.