# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia Thomas, : 
               Petitioner : 
                               : 
         v. :   No. 462 C.D. 2020
                               :   Submitted: October 9, 2020
Workers' Compensation Appeal : 
Board (Merakey Philadelphia), : 
               Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge[1]
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED: June 15, 2021**

Patricia Thomas (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated April 16, 2020. The Board affirmed an order of Workers' Compensation Judge Lawrence Beck (WCJ Beck), granting the modification petition (Modification Petition) filed by Merakey Philadelphia (Employer). We now affirm.

## I. BACKGROUND

On June 2, 2014, Claimant sustained an injury to her back lifting a crate of milk while working for Employer. (Certified Record (C.R.), Item No. 21 at 3.) Employer accepted liability for a lumbar sprain/strain pursuant to a medical-only

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

Notice of Compensation Payable. (*Id.*) Thereafter, on July 2, 2015, Workers' Compensation Judge Erin Young (WCJ Young) issued a decision and order that, *inter alia*, granted the claim petition filed by Claimant. (*Id.*) In so doing, WCJ Young concluded that Claimant suffered a "disabling work injury in the nature of an aggravation of preexisting degenerative disc disease with multiple protrusions, particularly at the L5-S1 disc, resulting in right lower extremity radiculopathy" while working for Employer on June 2, 2014. (*Id.*)

Subsequent thereto, on June 14, 2016, Employer filed a petition to modify Claimant's workers' compensation benefits, alleging a labor market survey (LMS) demonstrated that work was generally available to Claimant. (*Id.*) In support of its modification petition, Employer presented the deposition testimony of Christian Fras, M.D., who performed an independent medical examination (IME) of Claimant on October 23, 2015. (*Id.*) Based upon the results of his IME, Dr. Fras opined that, while Claimant had reached maximum medical improvement and had not fully recovered from her June 2, 2014 work-related injury, Claimant was capable of performing light-duty work. (*Id.* at 3-4.) Employer also offered the deposition testimony of John Dieckman (Dieckman), a certified rehabilitation counselor, who performed a vocational interview of Claimant and conducted a LMS to identify open and available employment positions that were within Dr. Fras' light-duty work restrictions for Claimant. (*Id.* at 4-7.) By decision and order dated June 30, 2017, Workers' Compensation Judge Marc Harrison denied Employer's modification petition, concluding that Employer failed to satisfy its burden of proving that Claimant had an earning capacity as required by Section 306(b)(2) of the Workers' Compensation Act (Act).[2] (*Id.* at 10-11.)

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512.

Thereafter, on March 8, 2018, Employer filed the Modification Petition presently at issue, alleging that, based upon a new LMS, Claimant had a residual earning capacity of $673.00. (C.R., Item No. 2.) In support of its Modification Petition, Employer offered the deposition testimony of Lucian Bednarz, M.D., who is board certified in physical medicine and rehabilitation. (C.R., Item No. 17 at 6.) Dr. Bednarz performed an IME of Claimant on October 26, 2017, which included reviewing Claimant's medical records, obtaining a history, and performing a physical examination. (*Id.* at 10-16.) Based upon the results of his IME, Dr. Bednarz opined within a reasonable degree of medical certainty that Claimant was capable of returning to work in a medium-duty capacity, lifting no more than fifty pounds at once or twenty-five pounds if the lifting is recurrent. (*Id.* at 16-17, 23.) Dr. Bednarz explained the basis for his opinion as follows:

> Well, based on the diagnosis as it was outlined[,] she, on examination, was found to be neurologically intact, so there was no ongoing evidence of radiculopathy, which would not be a progressive process to begin with.
>
> There w[ere] no surgical legions [sic] in her lower back. She basically had degenerative disc disease, which resulted in some range of motion deficits, and for those residual mild findings, I would restrict her from heavy lifting or repetitive bending.

(*Id.* at 17-18.) Dr. Bednarz clarified that, while Claimant may have initially had radicular findings, by the time of his IME, there was no longer any evidence of radiculopathy. (*Id.* at 18.) Dr. Bednarz further testified that he reviewed the available jobs identified by Dieckman in his LMS, all of which were sedentary to light-duty positions, and approved them for Claimant—*i.e.*, the available positions were within the range of Claimant's functional capabilities. (*Id.* at 20-21.)

Employer also offered the deposition testimony of Dieckman, who Employer again engaged to conduct a LMS to identify suitable positions for Claimant's

3

physical and vocational abilities. (C.R., Item No. 18.) Dieckman testified that the only vocational interview of Claimant occurred on March 21, 2016, in connection with Employer's first petition to modify Claimant's workers' compensation benefits. (*Id.* at 6-7.) Dieckman testified that he did not perform a second vocational interview in December 2017, when Employer issued the Notice of Ability to Return to Work in connection with Dr. Bednarz's IME report, because a relatively short period of time had elapsed since the first interview. (*Id.* at 8-9, 11-13.) He noted that, unless there is a specific change in educational or vocational history, typically there is no reason to conduct a second interview. (*Id*. at 12.) Dieckman also stated that he sent a letter to Claimant's attorney, indicating that he would not conduct a second vocational interview unless Claimant's attorney believed that it was necessary or there was a change in Claimant's educational or vocational history, but Dieckman did not receive a response. (*Id.*) Thus, based on the findings of his March 21, 2016 vocational interview, Dieckman conducted a LMS, wherein he identified twelve sedentary-duty positions that were open and available in January and February of 2018, consistent with Claimant's transferable skills, and within Claimant's physical capabilities. (*Id*. at 25-41, 43, 46-47.) All of the positions were within a thirty-mile radius of Claimant's home. (*Id*. at 44-45.) Dieckman explained that he provided Claimant with notice of the open and available positions in a series of three certified letters dated January 10, 2018, January 24, 2018, and February 9, 2018. (*Id*. at 10, 26.) Dieckman further explained that he also contacted Employer's human resources manager, who informed him that there were no available positions with Employer. (*Id*. at 20.) Based upon his vocational interview of Claimant and his LMS, Dieckman calculated Claimant's earning power in two different respects: first, based upon the highest paying position, Dieckman determined that Claimant

had an earning capacity of $673.20; and, second, based upon an average of all twelve positions, Dieckman determined that Claimant had an earning capacity of $480.68 per week. (*Id*. at 42-43.)

In opposition to Employer's Modification Petition, Claimant offered the deposition testimony of Joseph P. Guagliardo, D.O., who is board certified in orthopedic surgery. (C.R., Item No. 13 at 6.) Dr. Guagliardo, who took over Claimant's treatment when Norman B. Stempler, D.O., Claimant's regular treating physician, became ill and was hospitalized, testified that he evaluated Claimant several times in 2018. (*Id.* at 7-8, 11, 13.) Dr. Guagliardo explained that, during that time, Claimant walked with a walker in a slightly flexed position, had difficulty with activities of daily living, and had minimal motion in her lumbar spine. (*Id.* at 9-10.) Dr. Guagliardo further explained that, due to Claimant's increasing pain and positive results on magnetic resonance imaging (MRI) and electromyography, his office encouraged Claimant to undergo epidural steroid injections in her back. (*Id.* at 10-11.) Claimant did not respond to those epidural injections, however, and she continued to complain of back pain. (*Id.* at 11.) Dr. Guagliardo also stated that MRIs of Claimant's lumbar spine performed on August 21, 2017, and September 27, 2018, revealed that there was no interval change to the level of disc protrusions and disc bulging. (*Id.* at 12.)

Based upon his evaluation and treatment of Claimant, Dr. Guagliardo opined within a reasonable degree of medical certainty that, as a result of the June 2, 2014 work-related incident, Claimant sustained lumbar disc protrusions that are putting pressure on the spinal nerves causing lumbar radiculopathy. (*Id.* at 14.) Dr. Guagliardo disagreed with Dr. Bednarz's medical conclusions relative to Claimant's physical capabilities and opined that Claimant had ongoing

5

radiculopathy and damage to the spinal nerves that continued to prevent her from performing any work duties. (*Id*. at 15.) When questioned about the employment positions Employer identified for Claimant, Dr. Guagliardo noted that Claimant is limited in her ambulatory capacity, commenting "I feel that she is not capable of doing [those jobs]. She is not capable o[f] sitting for any period of time—sitting and standing. She is not capable of even filling a package up as a cashier. And her back pain and leg pain are too significant for that." (*Id*. at 15-16.) Dr. Guagliardo did not believe that Claimant was capable of working in any capacity. (*Id.* at 20.) Dr. Guagliardo admitted, however, that he was not aware of the surveillance video of Claimant, which depicted Claimant performing everyday activities without the use of a cane or walker for support. (*Id.* at 20-21; *see also* C.R., Item No. 20.)

Claimant then testified on her own behalf, both by deposition on May 2, 2018, and at a hearing before WCJ Beck on October 15, 2018. (C.R., Item Nos. 16, 12.) At those times, Claimant testified that she continues to experience severe pain in her lower back that travels down her leg into her right foot, uses a cane or walker to aid with ambulation, treats with Dr. Stempler or Dr. Guagliardo every four to six weeks, and undergoes physical therapy once a week. (C.R., Item No. 16 at 9-11; C.R., Item No. 12 at 5-7.) Claimant indicated that she is significantly limited as a result of chronic back pain—*e.g.*, she can only sit for thirty to forty-five minutes before she has to get up and lie down, she experiences severe pain when she stands for too long, she can only walk short distances before having to sit down, and she experiences pain when lifting. (C.R., Item No. 16 at 11-15.) Claimant indicated that she recalled receiving the Notice of Ability to Return to Work dated December 7, 2017, which indicated that she was capable of returning to work in a medium-duty capacity, and the correspondences from Dieckman during January and February 2018, which

6

identified twelve jobs that were within Claimant's physical restrictions. (*Id*. at 20-23.) Claimant testified that she did not believe that any of the twelve jobs were suitable for her because of her chronic pain, adding that she does not believe she is capable of any type of gainful employment because of her worsening pain and condition. (*Id*. at 23-25, 28, 30; C.R., Item No. 12 at 7-10, 13.) Claimant explained, however, that she did contact two of the employers, leaving a voicemail with one but not the other because the phone continued to ring without giving her the option to leave a voicemail. (C.R., Item No. 16 at 25-27.)

On March 14, 2019, WCJ Beck issued a decision, granting Employer's Modification Petition. In so doing, WCJ Beck summarized the testimony and made the following credibility determinations and relevant factual findings:

6. This [WCJ] reviewed . . . Claimant's testimony and finds her testimony regarding the extent of her disability and her abilities with regard to the found positions to be not credible. This [WCJ] bases this determination, in part, upon his personal viewing of her demeanor and deportment. Additionally, Claimant related that her condition has worsened, when even her medical expert indicated it has remained the same.

7. This [WCJ] has reviewed the testimony of . . . Dieckman and finds his testimony credible regarding the positions found. . . . Dieckman's testimony is supported by his ample professional background and the work he performed in finding the subject positions. This [WCJ] finds his testimony as to the positions to be cogent, clear[,] and comprehensive.

8. This [WCJ] has reviewed the testimony of Dr. Bednarz and finds his testimony cogent, clear, comprehensive, uncontradicted[,] and supported by the medical record as a whole. This [WCJ] finds credible Dr. Bednarz's testimony that Claimant could perform the presented positions. In accepting Dr. Bednarz's opinions, this [WCJ] finds Claimant's condition has changed: her abilities have improved since the prior litigation, as documented by Dr. Bednarz. Also[,] in accepting Dr. Bednarz's testimony, this [WCJ] rejects the testimony of Dr. Guagliardo.

7

> Dr. Guagliardo rejected the found positions based on Claimant's complaints, which this [WCJ] rejects. Further, Dr. Guagliardo failed to review the surveillance and was unaware of Claimant's daily activities.

(WCJ Decision at 8-9.) Based on these credibility determinations and relevant factual findings, WCJ Beck concluded that Employer met its burden of proving that Claimant was capable of returning to work as of January 10, 2018. WCJ Beck further held that Claimant's earning power is $480.68 per week—*i.e.*, the average weekly pay of the twelve jobs that Dieckman identified in his LMS. WCJ Beck, therefore, modified Claimant's workers' compensation benefits to $244.65 per week. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant now petitions this Court for review.

## II. ISSUES ON APPEAL

On appeal,[3] Claimant argues that the Board erred by affirming WCJ Beck's decision to grant Employer's Modification Petition because: (1) WCJ Beck's necessary findings are not supported by substantial evidence; and (2) WCJ Beck did not issue a reasoned decision as it concerns the calculation of Claimant's earning power.

## III. DISCUSSION

### A. Substantial Evidence

Claimant's argument that WCJ Beck's findings in support of his decision to modify Claimant's workers' compensation benefits are not supported by substantial evidence is twofold. First, Claimant argues that WCJ Beck's finding concerning her physical ability to return to work is not supported by substantial evidence, because

---

[3] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional rights were violated." *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

8

Dr. Bednarz failed to demonstrate an improvement or change in Claimant's condition from the time of her previous IME with Dr. Fras in 2015. Claimant further asserts that Dr. Bednarz's IME was not performed close enough in time to both the filing of Employer's Modification Petition (alleged five-month difference) and Employer's proffer of employment opportunities (alleged three-month difference) to be relevant. According to Claimant, the IME, thus, was not sufficient evidence upon which WCJ Beck could base a finding that Claimant's condition had improved. Second, Claimant argues that WCJ Beck's finding concerning the availability of suitable employment positions is not supported by substantial evidence, because the LMS and vocational examination were too outdated to have any bearing on Employer's Modification Petition filed on March 8, 2018. In particular, Claimant takes issue with Employer's failure to identify, as of March 8, 2018, which of the twelve positions were open and available. Because Employer failed to make such a showing, Claimant argues that WCJ Beck should not have relied upon those positions to establish Claimant's earning power.

In response, Employer argues that WCJ Beck's finding that Claimant was capable of performing the jobs identified in the LMS is supported by substantial evidence—*i.e.*, the credited testimony of Dieckman and Dr. Bednarz. Employer contends that Claimant's arguments to the contrary are based on a mischaracterization of both the record and WCJ Beck's findings. Employer points out that Dr. Bednarz testified that, at the time of his IME, Claimant exhibited no objective signs of ongoing radiculopathy, which, Employer alleges, was an improvement from her prior IME. Employer further argues that there is no case law to support Claimant's contention that Dieckman's LMS had to be performed within a certain timeframe of Dr. Bednarz's IME—the important fact is that Dr. Bednarz

9

had cleared Claimant to perform modified-duty work as of October 26, 2017, which date was prior to the time that Dieckman informed Claimant of the availability of the twelve positions that were within her physical and vocational capabilities. Moreover, Employer argues that Claimant's arguments regarding the timing of Dieckman's LMS relative to the filing of Employer's Modification Petition are misplaced. In that regard, Employer contends that WCJ Beck ultimately modified Claimant's earning power as of January 10, 2018, the date on which Dieckman first notified Claimant of the availability of open and available positions. Thus, there was no need for Employer to demonstrate that the positions were still available as of March 8, 2018. Employer further suggests that Dieckman's reliance on his prior vocational interview from March 21, 2016, was not improper because there is no evidence of record to suggest that Claimant's vocational or educational history changed since that time. We agree with Employer.

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* If the WCJ's findings are supported by substantial evidence, they are binding on appeal. *Agresta v. Workers' Comp. Appeal Bd. (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004). In determining whether the WCJ's findings are supported by substantial evidence, we may not reweigh the evidence or the credibility of the witnesses but must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015). It is irrelevant whether there is evidence to support contrary

findings; the relevant inquiry is whether substantial evidence supports the WCJ's necessary findings. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

For an employer to succeed in a modification petition, the employer must demonstrate at the outset that the claimant's condition has changed such that the claimant can work in some capacity. *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 532 A.2d 374, 380 (Pa. 1987); *Valenta v. Workers' Comp. Appeal Bd. (Abington Manor Nursing Home & Rehab)*, 176 A.3d 374, 384 (Pa. Cmwlth. 2017), *appeal denied*, 186 A.3d 371 (Pa. 2018). Thereafter, under Section 306(b)(2) of the Act, an employer must either:

> (1) offer to a claimant a specific job that it has available, which the claimant is capable of performing, or (2) establish "earning power" through expert opinion evidence including job listings with employment agencies, agencies of the Department of Labor and Industry, and advertisements in a claimant's usual area of employment.[4]

---

[4] In *Kachinski*, the Pennsylvania Supreme Court set forth the procedure for modification of a claimant's existing benefits where the claimant was able to return to work in some capacity. *Kachinski*, 532 A.2d at 379-80. First, the employer must establish an improvement in the claimant's medical condition, typically via medical evidence or expert testimony. *Id.* at 380. The employer then must identify available job openings that fit the occupational category of the claimant. *Id.* Once this showing has been met, the burden shifts to the claimant to demonstrate a good faith attempt to secure employment, and if such attempt was unsuccessful, benefit payments would continue. *Id.* Section 4 of the Act of June 24, 1996, P.L. 350, which has been referred to as Act 57, amended Section 306(b)(2) of the Act, however, allowing for an employer to obtain modification of benefits based on evidence of earning power through expert testimony or by offering the claimant a different position with the employer. *See* 77 P.S. § 512(b)(2). In other words, Act 57 *lowered* an employer's burden by no longer requiring the employer to offer a specific position and a claimant to obtain that position in order to modify the claimant's benefits. *See Riddle v. Workers' Comp. Appeal Bd. (Allegheny City Elec., Inc.)*, 981 A.2d 1288, 1292 n.8 (Pa. 2009); *Edwards v. Workers' Comp. Appeal Bd. (MPW Indus. Servs., Inc.)*, 858 A.2d 648, 651 (Pa. Cmwlth. 2004). The Supreme Court has signaled that *Kachinski* still applies in certain circumstances, however, where the injury took place before Act 57's enactment on June 24, 1996,

*S. Hills Health Sys. v. Workers' Comp. Appeal Bd. (Kiefer)*, 806 A.2d 962, 966 (Pa. Cmwlth. 2002). Where an employer seeks to establish earning power through use of a vocational expert, the employer bears the burden of identifying open and available positions within a claimant's field of vocation and by demonstrating that the claimant had a reasonable opportunity in which to apply for the positions. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 845-46 (Pa. 2013). A claimant must also be given an opportunity to rebut an employer's showing, but such evidence is only relevant and not dispositive of whether the claimant had a reasonable opportunity to apply. *Id.*; *Valenta*, 176 A.3d at 387. "The WCJ is charged with finding the facts necessary to support her or his decision . . . [regarding w]hether a claimant had a 'reasonable opportunity' to apply and did, in fact, apply" for an identified position. *Phoenixville Hosp.*, 81 A.3d at 846. Finally, a modification petition shall not be granted where the record demonstrates a claimant did *not* have a reasonable opportunity to apply for an employer's identified positions. *Smith v. Workers' Comp. Appeal Bd. (Supervalu Holdings PA, LLC)*, 177 A.3d 394, 404 (Pa. Cmwlth.), *appeal denied*, 189 A.3d 983 (Pa. 2018).

Based upon our review of Dr. Bednarz's testimony, we disagree with Claimant's contention concerning Dr. Bednarz's findings regarding an improvement or change in Claimant's condition. Dr. Bednarz testified that Claimant no longer showed signs of ongoing radiculopathy, which he noted was present at the onset of her injury. WCJ Beck credited Dr. Bednarz's testimony, finding his testimony to be "cogent, clear, comprehensive, uncontradicted and supported by the medical record as a whole." (C.R., Item No. 5 at 8.) Keeping in mind that matters of credibility are

---

or where an employer seeks to modify benefits based on an offer of a specific job with the employer. *Riddle*, 981 A.2d at 1292 n.8; *see also S. Hills Health Sys. v. Workers' Comp. Appeal Bd. (Kiefer)*, 806 A.2d 962, 967-68 (Pa. Cmwlth. 2002).

entirely within the province of the WCJ, it is clear to this Court that Dr. Bednarz's credible testimony established that Claimant's physical condition had improved by the time of his IME. Claimant, nevertheless, contends that Dr. Bednarz's testimony cannot constitute substantial evidence to support WCJ Beck's finding that Claimant was capable of returning to work in any of the positions identified in the LMS because of the time that had elapsed between Dr. Bednarz's IME and both the filing of Employer's Modification Petition and the proffer of job opportunities. The need for a new IME depends on the circumstances of each case. *Verizon Pa., Inc. v. Workers' Comp. Appeal Bd. (Guyders)*, 999 A.2d 665, 670-71 (Pa. Cmwlth. 2010), *appeal denied*, 14 A.3d 830 (Pa. 2011). Here, Dr. Bednarz's IME was conducted on October 26, 2017. Employer thereafter provided Claimant with a Notice of Ability to Return to Work dated December 7, 2017. Dieckman conducted the LMS and notified Claimant of the available positions in January and February of 2018. All of the positions were approved by Dr. Bednarz based on the results of his IME—*i.e.*, his opinion that Claimant was capable of returning to work in a modified-duty capacity. While Employer ultimately filed its Modification Petition on March 8, 2018, WCJ Beck modified Claimant's benefits not as of March 8, 2018, but rather, as of January 10, 2018, the date on which Dieckman first notified Claimant of the availability of open and available positions, which date was roughly two-and-a-half months after Dr. Bednarz performed his IME. Based on the foregoing, we do not see any evidence of record that establishes a need for a more current IME. For all of these reasons, we cannot conclude that WCJ Beck's finding concerning Claimant's physical ability to return to work is not supported by substantial evidence.

Claimant's arguments relative to the insufficiency of Dieckman's vocational interview and LMS to support WCJ Beck's finding concerning the availability of suitable employment positions are similarly misguided. With respect to the LMS, Dieckman credibly testified that he notified Claimant of the open and available positions that suited Claimant's physical and vocational capabilities by certified letters dated January 10, 2018, January 24, 2018, and February 9, 2018, thus giving Claimant a reasonable opportunity to apply for the positions. Employer did not need to show *again*, at the time that it filed its Modification Petition, which of the positions remained open and available. Employer only needed to demonstrate that it identified open and available positions that were within Claimant's physical and vocational capabilities and that it gave Claimant a reasonable opportunity to apply for those positions. *See Phoenixville Hosp.*, 81 A.3d at 845-46. Furthermore, WCJ Beck modified Claimant's workers' compensation benefits as of January 10, 2018— *i.e.*, the date Dieckman mailed the first set of positions to Claimant—not March 8, 2018, the date on which Employer filed its Modification Petition. Thus, the date on which Employer filed its Modification Petition is irrelevant under these circumstances. With respect to the vocational interview, Dieckman credibly testified that, unless there is some change to a person's vocational or educational history, a second vocational interview is not necessary. There is no evidence of record to suggest that Claimant's vocational or educational history changed between the time of the vocational interview on March 21, 2016, and the time of the LMS. Claimant admitted that she did not work after the June 2, 2014 work-related injury. In addition, Dieckman did not receive a response from Claimant's attorney regarding whether he believed it was necessary to conduct a second vocational interview. It is, therefore, disingenuous for Claimant to now assert that the lack of a second

14

vocational interview was somehow improper. For all of these reasons, we cannot conclude that WCJ Beck's finding concerning the availability of suitable employment positions is not supported by substantial evidence.

## B. Reasoned Decision

Claimant argues that WCJ Beck failed to issue a reasoned decision as required by Section 422(a) of the Act, 77 P.S. § 834, because, in calculating Claimant's earning power, WCJ Beck failed to properly identify which of the twelve jobs Claimant could actually perform. Claimant further argues that WCJ Beck erred in modifying Claimant's benefits based on the average wage of the twelve positions, because WCJ Beck concluded that two of the positions were inappropriate for Claimant (Finding of Fact No. 2(h)) and that Claimant applied for two of the jobs but was not hired (Finding of Fact No. 4(e)). Employer responds that, contrary to Claimant's contentions, the WCJ credited Dieckman's testimony that *all* of the jobs identified were suitable for Claimant. Employer points out, moreover, that the WCJ did not conclude in Finding of Fact No. 2(h) that two of the jobs were inappropriate; rather, it simply noted that two of the positions were in the sedentary-light classification as opposed to sedentary. Employer suggests that, because Dr. Bednarz approved Claimant for *medium-duty* restrictions, however, the positions were nevertheless appropriate. Again, we agree with Employer.

Section 422(a) of the Act provides, in pertinent part, that all parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v.*

15

*Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to "imagine" the reasons why a WCJ finds that the testimony of one witness was more credible than the testimony of another witness. *Id*. at 196. A WCJ must articulate the objective rationale underlying his or her credibility determinations where there is conflicting witness testimony. *Id*. A WCJ may satisfy the reasoned decision requirement if he summarized the witnesses' testimony "and adequately explained his credibility determinations." *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007), *appeal denied*, 951 A.2d 1167 (Pa. 2008). Thus, "while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012).

Presently, the WCJ credited Dieckman's testimony that all of the positions identified in the LMS were suitable for Claimant. The WCJ similarly credited Dr. Bednarz's testimony approving the positions Dieckman identified as within the medium-duty work restrictions that he had established for Claimant. In other words, by crediting Dieckman's and Dr. Bednarz's testimony, the WCJ found that Claimant was capable of performing all of the twelve positions. In making these credibility determinations, moreover, WCJ Beck identified the reasons for finding the testimony credible, thereby allowing this Court to engage in an adequate review of

16

his decision. In addition, while WCJ Beck noted in Finding of Fact No. 2(h) that two of the positions were in a different classification than the other ten, being sedentary-light as opposed to sedentary, WCJ Beck did *not* find that the positions were inappropriate for Claimant. In fact, based on Dr. Bednarz's and Dieckman's credible testimony, the sedentary to light-duty positions were clearly within Claimant's physical and vocational capabilities. WCJ Beck also did *not* find that Claimant applied for two of the jobs but was not hired. Rather, in Finding of Fact No. 4(e), WCJ Beck simply noted that Claimant testified that she called one of the employers but no one answered, and that she called a second employer and left a voicemail but received no response. Based on the foregoing, we cannot conclude that WCJ Beck failed to issue a reasoned decision as required by Section 422(a) of the Act.

Accordingly, we affirm the decision of the Board.

P. KEVIN BROBSON, Judge

17

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Patricia Thomas, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 462 C.D. 2020 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Merakey Philadelphia), | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 15ᵗʰ day of June, 2021, the order of the Workers' Compensation Appeal Board, dated April 16, 2020, is hereby AFFIRMED.

P. KEVIN BROBSON, Judge